# Illinois Official Reports

## Appellate Court

---

### *Gaudina v. State Farm Mutual Automobile Insurance Co.*,
### 2014 IL App (1st) 131264

---

| | |
|---|---|
| Appellate Court Caption | ROBERT GAUDINA, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-1264 |
| Filed | March 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly found that plaintiff was not an insured for purposes of underinsured motorist coverage under the policy defendant issued to plaintiff's wife, since the policy unambiguously defined "spouse" as a husband or wife who resides primarily with the insured, and in plaintiff's case, the evidence showed that at the time of the accident in which he was injured, he had been asked to leave the marital home, he did not primarily reside with his wife, he lived in his car and various other places, he used the address of a room he rented for his driver's license, health insurance, and workers' compensation claim, he had no other residences or living places, and he did not contribute to the expenses of the marital home, and under those circumstances, plaintiff did not fall within the scope of the policy's definition of a "spouse." |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-42003; the Hon. LeRoy Martin, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Law Office of Michael W. Rathsack, of Chicago (Daniel J. Kaiser and Michael W. Rathsack, of counsel), for appellant.

Taylor Miller LLC, of Chicago (Frank C. Stevens, of counsel), for appellee.

Panel

JUSTICE PALMER delivered the judgment of the court, with opinion.
Justices McBride and Taylor concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, Robert Gaudina, appeals from the circuit court's March 18, 2013, order denying his motion for summary judgment and granting summary judgment in favor of defendant, State Farm Mutual Automobile Insurance Company. On appeal, Gaudina contends that the circuit court erred in finding that he was not an insured entitled to coverage under his wife's policy. Gaudina asserts that the policy language is ambiguous and must be construed against State Farm. For the reasons that follow, we affirm.

¶ 2                                   BACKGROUND

¶ 3    Gaudina was injured in an automobile accident on December 8, 2009, while working as a limousine driver. After settling his bodily injury liability claim against the other driver for that driver's policy limit ($250,000), Gaudina filed an underinsured motorist claim with State Farm under the automobile insurance policy of his wife, Maureen Rife. State Farm denied coverage of the claim on grounds that Gaudina was not an insured because, at the time of the accident, he was not residing primarily with her, and he therefore did not fit the definition of Rife's "spouse," as set forth the policy. Rife's automobile insurance policy defined "spouse" as:

"DEFINED WORDS
WHICH ARE USED IN SEVERAL PARTS OF THE POLICY

We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in boldface italics. *You* can pick them out easily.

* * *

*Spouse*–means *your* husband or wife who resides primarily with *you*."

¶ 4    Further, the policy set forth who was considered an "insured" for purposes of the underinsured motor vehicle coverage:

"UNDERINSURED MOTOR VEHICLE–COVERAGE W

*You* have this coverage if 'W' appears in the 'Coverages' space on the declarations page.

We will pay for damages for ***bodily injury*** and ***insured*** is legally entitled to collect from the owner or driver of an ***underinsured motor vehicle.*** The ***bodily injury*** must be sustained by an ***insured*** and caused by accident arising out of the operation, maintenance or use of an ***underinsured motor vehicle***.

* * *

**Who is an Insured–Coverages U, U1 and W**

***Insured***–means the ***person*** or ***persons*** covered by uninsured motor vehicle or underinsured motor vehicle coverages.

With respect to ***bodily injury***, this is:

    1. the first ***person*** named in the declarations;
    2. his or her ***spouse***;
    3. their ***relatives*** ***[.]"

¶ 5    On December 7, 2011, Gaudina filed a declaratory judgment action against State Farm seeking a declaration that he was in fact an insured entitled to coverage of his claim under Rife's policy. Gaudina's complaint also sought damages and attorney fees pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2008)) for State Farm's allegedly unreasonable and vexatious denial of coverage.

¶ 6    Both State Farm and Gaudina moved for summary judgment pursuant section 2-1005 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1005 (West 2008)). State Farm asserted that Gaudina was not entitled to coverage because he did not fit the definition of "spouse" as he did not reside primarily with Rife at the time of the accident. State Farm also argued that Gaudina's claim for section 155 damages should be dismissed because the loss was not covered under the policy and, at the very least, there was a *bona fide* coverage dispute.

¶ 7    Gaudina moved for summary judgment only as to his claim that he should be covered under the policy. Gaudina argued that the evidence showed that he never intended to permanently leave the house which he and Rife shared and that the policy language was ambiguous. Gaudina asserted that the phrase "resides primarily" was not defined in the policy and could have more than one meaning. That is, "primarily" could mean the residence that was "of most significance" or the residence where an individual spent most nights, and the policy also failed to specify the relevant time frame for determining where a person resides.

¶ 8    The parties cited several pieces of evidence in support of their respective arguments, including Gaudina's deposition and Rife's recorded statement to State Farm. In his deposition, Gaudina testified that he and Rife married in 2006 and had one child in 2007. Gaudina moved from Kansas to Rife's house in Crystal Lake, Illinois, when they got married. In approximately February 2007, they moved into a house at 774 Chisholm Trail in Roselle, Illinois. The title to the Chisholm Trail house was in Rife's name only and Gaudina did not contribute money to the purchase of the house, although he helped renovate it. Gaudina testified that in September 2008, Rife told Gaudina to leave the household; he had quit his job and had been unemployed for a long period of time, which Rife was unhappy about. Gaudina testified that Rife told him to leave until he found a job because Rife felt that

she was holding him back. Gaudina testified that Rife "finally had enough" and told him "[g]o out and find something. Get your life together. And come back." Gaudina testified that he intended to return at some point and resume permanently living there with Rife, and the couple had attended marital counseling.

¶ 9　　When he left, Gaudina took some clothes and toiletries. He testified that he left most of his clothes, pictures, other toiletries, and a few pieces of furniture at the Chisholm Trail house. He also testified that he would spend one or two nights a week at the house, or stop by to visit his daughter in the afternoon if he was in the area. He had a garage door opener for the house. Initially, he and Rife opened a joint checking account, but they got separate accounts when they separated in September 2008. He did not pay child support and he and his wife never filed for divorce. His name was taken off the utility bills when he left, and he did not pay any household expenses during the time he was not living there, except for the cable bill.

¶ 10　　Gaudina testified that he lived in his car at first, and then rented a room in a townhouse in Lake Barrington, Illinois, in October 2008, and retrieved more of his clothes from the Chisholm Trail address. Gaudina testified that he eventually found employment as a driver for the limousine company in early 2009, but Rife did not ask him to return to the house because "she wanted to see if it was going to work." He believed that the W-2 statements from his job were sent to a post office box that he kept or to the Chisholm Trail address. He lived at the Lake Barrington townhouse until the accident in December 2009. At the time of the accident, Gaudina had a Kansas driver's license, but he later changed to an Illinois license, and the Illinois license listed the address in Lake Barrington. He affirmed that a January 2010 explanation of benefits from his health insurance provider listed the Lake Barrington address and that he had provided the address. He also used the Lake Barrington address for his workers' compensation claim relating to the December 8, 2009 accident. He testified that he had an insurance policy through State Farm for the car he owned, but he did not know whether it was in effect at the time of the accident.

¶ 11　　Immediately following the accident, Gaudina was hospitalized. He testified that he then went to the live at the Chisholm Trail address because Rife offered to provide care for him as he recuperated. He was hospitalized two times thereafter because of complications. He and Rife moved his belongings out of the Lake Barrington address at some point after the accident. Ultimately, Rife again asked Gaudina to leave the Chisholm Trail house on December 15, 2010, because his failure to find employment was causing her stress. He lived in his car and in homeless shelters, and he later lived in a rented office in Elgin.

¶ 12　　At the time of the deposition, Gaudina was living with his daughter, for whom he was the primary caregiver, in a house on Flamingo Drive in Roselle. He had lived there since August 2011 and shared the house with a few other men. In answer to an interrogatory requesting all residences that Gaudina had maintained since 2007, Gaudina listed the address on Chisholm Trail in Roselle, the townhouse in Lake Barrington, and the house in Flamingo Drive in Roselle.

¶ 13　　In Rife's recorded statement to State Farm, she stated Gaudina was not "officially" living at the Chisholm Trail address at the time of the accident, but he "periodically would stay there from time to time 'cause you know we have a child together and he would need to be with her while I'm working or whatever." She stated that the last time Gaudina had full time residency at the Chisholm Trail house was September of 2008, and he did not leave

voluntarily. She stated that he sometimes received mail there, although he also had a post office box. She stated that he rented somewhere else to live and some of his belongings were with him and some were at the Chisholm Trail house. He returned to live with her after the accident as he recovered, but she stated that she again "told him he had to leave *** 'cause it caused too much stress for [her] uh for him to be here."

¶ 14    At the hearing on the motions for summary judgment on March 18, 2013, the circuit court held that the definition of "spouse" in the policy was not ambiguous and it should assess whether a person was a "spouse" for purposes of coverage at the time of the accident. Considering the undisputed facts, the circuit court concluded that Rife's residence was not Gaudina's primary residence at the time of the accident, based on the admissions of both Gaudina and Rife, and, consequently, Gaudina was not covered under Rife's underinsured motorist policy. The court also held that damages under section 155 were not appropriate. The circuit court entered an order granting State Farm's motion for summary judgment against both claims in Gaudina's complaint, denying Gaudina's motion for summary judgment, and entering judgment in favor of State Farm. Gaudina filed a timely notice of appeal.

¶ 15                                ANALYSIS

¶ 16    "[S]ummary judgment is proper only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49 (citing 735 ILCS 5/2-1005(c) (West 2000)). We review the circuit court's decision *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). As summary judgment is a drastic measure, the moving party's right must be "clear and free from doubt." *Mashal*, 2012 IL 112341, ¶ 49. As in this case, where both parties filed cross-motions for summary judgment, "they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law." *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005) (citing *Continental Casualty Co. v. Law Offices of Melvin James Kaplan*, 345 Ill. App. 3d 34, 37-38 (2003)).

¶ 17    This case also involves the interpretation of an insurance policy contract, which presents an issue of law that we review *de novo*. *Crum & Forster Managers Corp. v. Resolution Trust Corp*., 156 Ill. 2d 384, 391 (1993). "[T]he rules applicable to contract interpretation govern the interpretation of an insurance policy." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). In reviewing an insurance policy, our primary objective is to effectuate the intent of the parties, construing the policy as a whole and accounting for every provision. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc*., 223 Ill. 2d 352, 362-63 (2006). To that end, the court must also "consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *American National Fire Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh*, 343 Ill. App. 3d 93, 103 (2003).

¶ 18    When the words of a policy are unambiguous, "a court must afford them their *plain, ordinary, and popular meaning*." (Emphasis in original.) *Outboard Marine*, 154 Ill. 2d at 108. "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). "Ambiguity exists

- 5 -

in an insurance contract if the language is subject to more than one reasonable interpretation, but we will not strain to find an ambiguity where none exists." *Abram v. United Services Automobile Ass'n*, 395 Ill. App. 3d 700, 703 (2009). "A policy provision is not rendered ambiguous simply because the parties disagree as to its meaning." *Munoz*, 237 Ill. 2d at 433. This court also will not "adopt an interpretation which rests on 'gossamer distinctions' that the average person, for whom the policy is written, cannot be expected to understand [citation]." *Id.* (quoting *Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America*, 411 Ill. 325, 334 (1952)). When terms are "specifically defined in the policy, *** they will be given the meaning as defined in the policy." *American National Fire Insurance*, 343 Ill. App. 3d at 103. "Where a term in an insurance policy is not defined, we afford that term its plain, ordinary and popular meaning, *i.e.*, we look to its dictionary definition." *Munoz*, 237 Ill. 2d at 436.

¶ 19    On appeal, Gaudina contends that the term "spouse" should be given its "universally understood meaning," instead of the meaning provided by the definition in the policy. Gaudina argues that a reasonable person would understand "spouse" to mean a husband or wife, without the caveat that the spouse must reside primarily with the insured, and thus would not be on notice of State Farm's definition. Gaudina also asserts that the definition of "spouse" is ambiguous because it does not specify the relevant time frame for determining whether he primarily resided with the insured.

¶ 20    On the other hand, State Farm contends that the definition of "spouse" is clear and unambiguous, the definition was set forth in the policy and emphasized by bold, italicized print, and a person who accepts a policy is deemed to know its contents. Further, courts in other jurisdictions have found the phrase "primarily resides with you" in insurance contracts to be unambiguous and enforceable.

¶ 21    Turning to the specific policy language at issue, we note that the definitions section provides that the policy contains some defined words "to shorten the policy" and "make[ ] it easier to read and understand. Defined words are printed in boldface italics. *You* can pick them out easily." Among the terms included in the definitions section is "*spouse*," which is defined as "*your* husband or wife who resides primarily with *you*." Throughout the policy, "*spouse*" appears in boldface italics. In particular, the underinsured motorist coverage section provides that an "*insured*," which is also in boldface italics, is defined as "the *person* or *persons* covered by uninsured motor vehicle or underinsured motor vehicle coverages. With respect to *bodily injury*, this is *** his or her *spouse*."

¶ 22    Because the term "spouse" is specifically defined in the policy, the definition in the policy controls. *American National Fire Insurance*, 343 Ill. App. 3d at 103. We therefore have no reason to turn to a dictionary definition of "spouse" or Gaudina's suggested definition. Gaudina also contends that the phrase "resides primarily" in the definition of "spouse" is ambiguous. As Rife's policy does not define "primarily," we therefore look to the dictionary definition of this word. *Munoz*, 237 Ill. 2d at 436. "Primarily" is defined as "[a]t first; originally," and also "[c]hiefly; principally." American Heritage Dictionary 983 (2d coll. ed. 1985). Considering the definition of "primarily," we draw the logical conclusion that the phrase "resides primarily with [the insured]" means that a "spouse" is a named insured's husband or wife who resides "principally" with the insured.

¶ 23    We also find several cases from other jurisdictions that were discussed by the parties to be helpful in construing this phrase. For example, in *Wallace v. State Farm Mutual*

*Automobile Insurance Co.*, 2007-Ohio-6373, ¶ 8 (Ohio Ct. App. Nov. 30, 2007), the Ohio Court of Appeals interpreted the language of an underinsured motorist coverage provision regarding coverage for bodily injury to a "relative," defined as " 'a person related to you or your spouse *** who resides primarily with you.' " In *Wallace*, the divorced parents of the decedent daughter killed in a car accident both filed claims under their respective insurance policies, but State Farm determined that the decedent resided primarily with the father and denied the mother's claim. *Id.* ¶¶ 6-10. The court noted that the requirement that the injured party reside primarily with the insured was a "standard policy coverage prerequisite common in policies issued across the country by State Farm." *Id.* ¶ 16. The court observed that other courts had parsed this same language and found it to be unambiguous and enforceable, and that the modifier "primarily" indicated that "there can be but one primary residence for insurance coverage limitation purposes," and although a person could live in multiple places, he or she "cannot reside 'primarily' in multiple places." *Id.* ¶¶ 17-18. Finding this language unambiguous and enforceable, the court held that the facts indicated that the decedent's primary residence was with her father. *Id.* ¶¶ 19-22. Although the decedent apportioned her time living with both parents, the court observed that she continued her education in her hometown after the divorce and lived with her father while in school, she listed her father's residence (the original family home) as her address for her driver's license and employment applications, and her mother characterized the original family address as the home address. *Id.* ¶¶ 20-22.

¶ 24 Similarly, in *Bauer v. USAA Casualty Insurance Co.*, 2006 WI App 152, ¶ 4, 295 Wis. 2d 418, 720 N.W.2d 187, the underinsured motorist provision of the insurance policy at issue defined a "relative" as a person who "resides primarily with" the named insured. The son of the insured (the mother) left his mother's house in Wisconsin after enlisting in the Navy for five years, and he only returned to his mother's house intermittently when he was granted leave for a few weeks. *Id.* ¶ 3. He rented an apartment where he was stationed and kept personal items and his motorcycle there, but he maintained a Wisconsin operator's permit, listed his mother's address on his tax return, had a room at his mother's house and stored hunting gear and clothing there, and he planned to return to Wisconsin after his enlistment. *Id.* The court found the phrase "resides primarily with" distinguishable from the phrase "resident of the same household" (internal quotation marks omitted) because while a person may be a resident of more than one household, this was "not physically possible where the insurance policy description includes the word 'primarily.' One cannot primarily reside in two households at the same time." *Id.* ¶¶ 5-8. The court concluded that, given the facts of the case and the dictionary definition of "primarily," the phrase "resides primarily with you" was unambiguous. *Id.* ¶ 11. The court held that this definition did not cover the insured's son because he did not reside primarily with the insured. *Id.* ¶ 12.

¶ 25 Although these cases interpreted the term "relative" instead of "spouse," the policies similarly defined "relative" as someone who resided "primarily" with the named insured, as in this case. As noted in *Wallace* and *Bauer*, it is axiomatic that a person can only reside "primarily" in one household at a time. Accordingly, we do not find the definition of "spouse" to be ambiguous in that regard.

¶ 26 Gaudina also asserts that "spouse" is ambiguous because the policy does not specify a relevant time period for determining when a person "resides primarily" with an insured. However, "[q]uestions of applicable coverage can be determined only as of the time of the

accident creating potential liability." *Coley v. State Farm Mutual Automobile Insurance Co.*, 178 Ill. App. 3d 1077, 1081 (1989). See also *Hawkeye Security Insurance Co. v. Sanchez*, 122 Ill. App. 3d 183 (1984) (same). A determination of whether Gaudina was Rife's "spouse" under the policy should be made by referring to the circumstances as they existed at the time of the accident giving rise to Gaudina's claim. Therefore, the policy's definition of "spouse" was not ambiguous with respect to the relevant time frame for determining whether a person qualifies as a "spouse," and therefore an insured, under the policy.

¶ 27      With the foregoing analysis in mind, we agree with the circuit court that the undisputed facts showed that Gaudina did not primarily reside with Rife at the time of the accident. After Rife asked him to leave the Chisholm Trail address in September 2008, he lived in his car for a few weeks and then he rented a room in a townhouse in Lake Barrington in October 2008. Rife similarly confirmed that she told him to leave their marital home in September 2008. He spent most nights at the Lake Barrington address, five or six nights per week, and kept his clothing and toiletries there. He used the Lake Barrington address for his driver's license, personal health insurance, and worker's compensation claim. Although he left some belongings at the Chisholm Trail address and visited it one or two nights per week, Gaudina admitted in his deposition and answer to interrogatories that he resided at the townhouse in Lake Barrington after he moved out of the Chisholm Trail house. He admitted that he did not have any other residences or living places between the time he started living in Lake Barrington and the accident. He did not contribute to the household expenses of the Chisholm Trail address, other than the cable bill, and his name was taken off of the utilities.

¶ 28      Although Gaudina emphasizes that it was always his intention to return to Rife's house on Chisholm Trail at some point, we note that he did not move back into the Chisholm Trail address after he was able to obtain employment with the limousine company. He lived at the Lake Barrington address for over a year before the accident occurred. Generally, whether a person is a "resident" of a household is a function of a person's "intent, physical presence, and permanency of abode." *Coriasco v. Hutchcraft*, 245 Ill. App. 3d 969, 971 (1993). While a person may have several residences, he or she "can have only one domicile, or permanent abode, at a time." *Id.* Gaudina's argument regarding his intent may relate to whether he could be considered a "resident," at all, of Rife's house. However, that is not the relevant inquiry based on the language of the policy in this case, which required that he reside primarily with the insured at the time of the accident. As stated, Gaudina cannot reside primarily in multiple places at the same time.

¶ 29      In addition, we disagree with Gaudina's contention that a reasonable person would not have been on notice regarding the specific definition of "spouse" in the policy. The policy clearly advised that words in boldface italics were given specific definitions. The term "spouse" appears in boldface italics throughout the policy. There was no attempt to hide the definition of "spouse" or the details of the coverage available under the underinsured motorist provision. The policy unambiguously and clearly notified insureds or potential insureds that there was a specific definition attached to the term "spouse." Moreover, under Illinois law, where a party denies the effectiveness of part of an insurance policy, "a duty is imposed upon the insured to have read the policy and to have informed the insurer of any discrepancy prior to the time of filing a claim." *Floral Consultants, Ltd. v. Hanover Insurance Co.*, 128 Ill. App. 3d 173, 176 (1984). See also *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill. 2d 522, 527 (1975) ("The insured normally must be charged with the knowledge of the

terms of the master policy."); *Foster v. Crum & Forster Insurance Cos.*, 36 Ill. App. 3d 595, 598 (1976) ("Although we recognize, as plaintiffs assert, that laymen may not, as a common practice, read insurance policies, we cannot excuse plaintiffs from their burden of knowing the contents of insurance policies and bringing alleged discrepancies to the attention of the company.").

¶ 30   We also find it significant that, as State Farm points out, the policy did not go into effect until after Gaudina had already left the Chisholm Trail residence at Rife's request. The record reflects that the effective date of the policy, which Gaudina does not dispute, was from October 8, 2008, to March 28, 2009, and that the policy was still in effect on the date of the accident on December 8, 2009. It is undisputed that Gaudina left the Chisholm Trail address in September 2008. The accident occurred over one year later on December 8, 2009. Although the policy was in effect on the date of the accident, Gaudina had already been out of the marital home from before the effective date of the policy and through the date of the accident. Given these facts, it cannot be argued that Gaudina or Rife were unfairly surprised by the definition of the term "spouse" in the policy.

¶ 31   In ruling, we note that State Farm argues that Gaudina improperly cited in his brief on appeal an unpublished order from another district of this court. Illinois Supreme Court Rule 23(e) (eff. July 1, 2011) provides that orders entered pursuant to subpart (b) or (c) of the rule are "not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." Gaudina cited an unpublished order to support his contention that the definition of "spouse" is ambiguous, a purpose which is not among the listed exceptions in Rule 23(e), and we therefore do not consider the unpublished order.

¶ 32   State Farm also argues that Gaudina has waived any challenge to the circuit court's decision to grant summary disposition as to Gaudina's section 155 (215 ILCS 5/155 (West 2008)) claim because he did not raise it in his brief on appeal. We agree that the issue has been waived because he did not raise it on appeal. *In re Marriage of Winter*, 2013 IL App (1st) 112836, ¶ 29; Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). Moreover, Gaudina concedes in his reply brief that he is not challenging that portion of the circuit court's decision.

¶ 33                                   CONCLUSION

¶ 34   For the reasons stated above, we affirm the circuit court's order granting defendant's motion for summary judgment, denying plaintiff's motion for summary judgment, and entering judgment in favor of defendant.

¶ 35   Affirmed.