# Illinois Official Reports

## Appellate Court

***Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745**

| | |
|---|---|
| Appellate Court Caption | ARGONAUT MIDWEST INSURANCE COMPANY, Plaintiff-Appellee, v. GABRIEL MORALES, LAND TRUCK, INC., and INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, INC., an Illinois Corporation, Defendants-Appellants (Raymond J. Jones, Stanley Herbert, Morris K. Stevens, and Gloria Stevens, Defendants). |
| District & No. | First District, Third Division<br>Docket No. 1-13-0745 |
| Filed | September 3, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an insurance dispute over the coverage for a trucking accident involving defendant, the owner of a motor vehicle engaged in an independent business of hauling commodities pursuant to a contract, the company whose commodities he agreed to haul and plaintiff, the insurer that issued a bobtail insurance policy to defendant providing coverage for defendant when he used his truck and trailer for his own purposes but not when he rented it out, the trial court properly entered summary judgment holding that defendant's insurer had no duty to defend or indemnify defendant under the policy for the injuries suffered by the passengers of a vehicle struck by defendant's truck and trailer while he was engaged in hauling for the company with which he had an agreement, since the policy issued by plaintiff contained a "Trucker–Insurance for Non-Trucking Use" endorsement excluding coverage for defendant's covered vehicle while used in the business of anyone to whom it is rented. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-27901; the Hon. Rodolfo Garcia, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Perry M. Shorris and Alice Ye, both of Lewis, Brisbois, Bisgaard &
Smith, LLP, of Chicago, for appellants.

Joshua Vincent and Kimberly Jansen, both of Hinshaw & Culbertson,
LLP, of Chicago, for appellee.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court,
with opinion.
Justice Neville concurred in the judgment and opinion.
Justice Mason dissented, with opinion.

## OPINION

¶ 1    This case involves cross-motions for summary judgment on issues involving insurance coverage of a trucking accident. Appellants-defendants Gabriel Morales, Land Truck, Inc., and Insurance Company of the State of Pennsylvania, Inc., appeal the trial court's summary judgment order in favor of plaintiff Argonaut Midwest Insurance Company, which held that Argonaut's policy did not cover the accident. Appellants raise two issues on appeal: (i) whether coverage is excluded under the "Trucker–Insurance for Non-Trucking Use" endorsement; and (ii) whether Land Truck is entitled to a defense under the policy. We affirm, holding that Argonaut has no duty to defend or indemnify Morales under the "Trucker–Insurance for Non-Trucking Use" exception, and that Land Truck is not considered an insured under Argonaut's policy.

¶ 2                                      BACKGROUND

¶ 3    Gabriel Morales entered into an "Owner Operator Contract" with Land Truck in April 2007. The contract described Land Truck as "a common carrier by motor vehicle holding authority from the Federal Highway Administration." The contract identifies Morales as an independent contractor and the owner of a motor vehicle who "is engaged in an independently established business of hauling commodities by motor vehicle pursuant to contract with contract or common carriers." Land Truck agreed to pay Morales a "flat rate ~~percentage~~ of Gross revenue." (Strikeout in original.)

¶ 4    Regarding insurance, the contract provides that "[u]nless required by statute or ordinance," Land Truck will not provide any insurance to Morales. Moreover, the contract required Morales carry his own insurance, including "Bobtail Insurance naming Land Truck Inc as an 'Additional Named Insured' and Certificate Holder." " 'Bob-tail' in trucking parlance is the operation of a tractor without an attached trailer," and "bobtail insurance" typically refers to insurance for when a tractor is not being used in the business of an authorized carrier. *Prestige Casualty Co. v. Michigan Mutual Insurance Co.*, 99 F.3d 1340 (6th Cir. 1996). Land Truck

required Morales pay "all costs and expenses incident to the performance of" the contract, including premiums for insurance to cover physical damages, vehicle operating and maintenance costs, fees and taxes, and tolls, among others.

¶ 5    Morales agreed to haul commodities for Land Truck, but could refuse loads and do business with other carriers as long as Land Truck received proper notice. Morales would display Land Truck's placards and identifications when hauling for it, and remove them when not. Morales had sole responsibility for the "direction and control" of his operators, and discretion regarding the "methods and means" of fulfilling his obligations to Land Truck.

¶ 6    Land Truck agreed to comply with the rules and regulations of the Interstate Commerce Commission, the Department of Transportation, and state regulatory authorities. Subject to those rules and regulations, Morales had the right to "control and direct, in all respects, the operation of the equipment used in the performance" of the contract. The contract lasted one year, subject to automatic renewal.

¶ 7    Effective early March 2009, plaintiff Argonaut Midwest Insurance Company issued a $1 million insurance policy to Morales. Under the policy, Argonaut agreed to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." Argonaut agreed to "defend any 'Insured' against a 'suit' asking for these damages ***. However, [it had] no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' *** to which this insurance does not apply."

¶ 8    The policy defines "insureds" to include "You [Morales] for any covered 'auto'." Among the schedule of covered autos, Morales's 2003 Freightliner truck is listed. An endorsement titled "Truckers–Insurance for Non-Trucking Use" states, "This insurance does not apply to: *** A covered 'auto' while used in the business of anyone to whom the auto is *rented*." (Emphasis added.)

¶ 9    Later in March 2009, Land Truck notified Morales of a pickup from Waukegan, Illinois. Morales got a dispatch sheet from Land Truck, went to get his truck and trailer from a parking spot he rented, and went to retrieve the empty container. Morales paid tolls with an I-Pass provided by Land Truck. Morales was driving north on I-294 when he struck a vehicle carrying Stanley Herbert, Raymond Jones, and Morris Stevens.

¶ 10   In 2009, Herbert, Jones, and Stevens sued Morales and Land Truck. Their amended complaint alleges negligence against Morales and Land Truck, and Stevens' wife, Gloria, alleges loss of consortium.

¶ 11   Argonaut filed a complaint for declaratory judgment against Morales, Land Truck, Herbert, Jones, and the Stevenses, claiming it had no duty to defend or indemnify Morales or Land Truck in the underlying suit. Alternatively, Argonaut claimed that the defense costs of the underlying suit should be apportioned between itself and Land Truck's insurer, defendant Insurance Company of the State of Pennsylvania.

¶ 12   The parties filed cross-motions for summary judgment. The trial court granted Argonaut summary judgment, holding that it had no duty to defend either Morales or Land Truck. This appeal timely followed.

STANDARD OF REVIEW

¶ 14    Summary judgment may be granted where no triable issue of material fact is present and the movant is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). "A genuine issue of material fact *** exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." (Internal quotation marks omitted.) *Windmill Nursing Pavilion, Ltd. v. Cincinnati Insurance Co.*, 2013 IL App (1st) 122431, ¶ 18. Cross-motions for summary judgment indicate none of the movants believe a factual dispute exists regarding the issues raised. *Illinois Emcasco Insurance Co. v. Waukegan Steel Sales Inc.*, 2013 IL App (1st) 120735, ¶ 11. "We review the circuit court's grant of summary judgment *de novo*." *Skokie Castings, Inc. v. Illinois Insurance Guaranty Fund*, 2013 IL 113873, ¶ 27.

¶ 15    ANALYSIS

¶ 16    Appellants argue (i) the "Trucker–Insurance for Non-Trucking Use" endorsement does not apply, and (ii) Land Truck is an insured under Argonaut's policy. We conclude that neither argument has merit.

¶ 17    Nontrucking Endorsement

¶ 18    Appellants assert two reasons for the inapplicability of the endorsement: (i) Land Truck did not rent the Freightliner because it did not take exclusive possession or control of it; and (ii) the term "rented" is ambiguous. We reject both assertions.

¶ 19    We interpret an insurance policy as we would any other contract, reading the terms to give effect to the intent of the parties. *Gaudina v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131264, ¶ 17. We give unambiguous policy terms their plain, ordinary, popular meaning. *Id.* ¶ 18. Ambiguity exists where the policy terms can produce more than one reasonable interpretation. *Id*. Where there is ambiguity, we construe the policy liberally in favor of coverage. *Id*.

¶ 20    Appellants note that the endorsement excludes coverage where the Freightliner "used in the business of anyone to whom the auto is rented." They argue that Morales's truck was never rented under the terms of the agreement between Land Truck and Morales. "Rent," they assert, requires the right to exclusive possession and control. Dictionary definitions of "rent," however, do not require exclusive possession. See Black's Law Dictionary 1410 (9th ed. 2009) (as a noun, "Consideration paid, usu. periodically, for the use or occupancy of property"); Webster's Third New International Dictionary 1923 (1993) (as a verb, "to grant the possession and enjoyment of for rent : hire out").

¶ 21    Appellants also cite foreign case law indicating that renting or leasing property requires the transfer of exclusive possession. *E.g.*, *Canal Insurance Co. v. Liberty Mutual Insurance*, 395 F. Supp. 962 (N.D. Ga. 1975) (holding use of truck incidental to service contract did not constitute lease of vehicle). In addition, they point to *Millenium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010), where our supreme court stated, regarding real property, "[i]f the contract gives exclusive possession of the premises against all the world, including the owner, it is a lease, but if it merely confers a privilege to occupy the premises under the owner, it is a license." (Internal quotation marks omitted.) They cite as well the Automobile Renting Occupation and Use Tax Act (35 ILCS 155/1 *et seq.* (West 2012)), which defines vehicle rental

as requiring "any transfer of the possession or right to possession of an automobile." 35 ILCS 155/2 (West 2012). Appellants acknowledge this statute does not apply to commercial trucks.

¶ 22 Further, appellants argue that Morales did not transfer complete possession or control of his truck to Land Truck, and therefore the nontrucking endorsement does not apply, noting the owner operator contract states, "Subject to the specific requirements of the Interstate Commerce Commission and/or D.O.T. and of any State regulatory agency having jurisdiction: *** The *Contractor* [Morales] *shall control and direct, in all respects, the operation of the equipment* used in the performance of this Contract." (Emphasis added.) Because the agreement purports to leave control of the Freightliner in Morales's possession, appellants assert that it is not a "rental" agreement. They conclude that Land Truck did not rent Morales's truck, and therefore the nontrucking endorsement does not apply.

¶ 23 We disagree with appellants' logic. Under the facts here, transferring exclusive control, possession, and use of a vehicle do constitute renting, and the owner operator contract between Morales and Land Truck is a rental agreement.

¶ 24 While the agreement does not say so, statutes and regulations require Land Truck to assume exclusive control of Morales's truck. As the owner operator contract states, Land Truck is a common carrier registered with the United States Department of Transportation (DOT). Registration requires motor carriers be willing and able to comply with DOT rules and regulations. 49 U.S.C. § 13902(a)(1)(A)(i) (2012). Those rules provide that an "authorized carrier may perform authorized transportation in equipment *it does not own* only" if there is "a written lease granting the use of the equipment." (Emphasis added.) 49 C.F.R. § 376.11(a) (2012). Federal law further requires that a written lease "provide that the authorized carrier lessee shall have *exclusive possession, control, and use of the equipment* for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease." (Emphasis added.) 49 C.F.R. § 376.12(c)(1) (2012).

¶ 25 While the owner operator contract appears to contradict these terms, those contradictory terms are "*[s]ubject to* the specific requirements of the Interstate Commerce Commission and/or D.O.T. and of any State regulatory agency having jurisdiction." (Emphasis added.) Critically, the words "subject to" create a condition to apply the terms that follow. *Catholic Charities of the Archdiocese of Chicago v. Thorpe*, 318 Ill. App. 3d 304, 309 (2000). That is, the agreement that Morales controls the use of his truck is conditioned on the conformance of those contract terms with DOT regulations. Because those contract terms contradict DOT regulations, the regulations control. 11 Richard A. Lord, Williston on Contracts § 30:19 (4th ed. 2012) ("When a contract expressly incorporates a statutory enactment by reference, that enactment becomes part of the contract for the indicated purposes just as though the words of that enactment were set out in full in the contract."). Thus, under DOT regulations and the owner operator agreement, Land Truck assumed "exclusive possession, control, and use" of Morales's Freightliner. 49 C.F.R. § 376.12(c)(1) (2012).

¶ 26 Argonaut notes that, under Illinois law, the motor carrier's exclusive possession is implied in the lease:

"The following terms, if not stated in a lease, shall be implied. Any contrary provisions in the lease shall be void.

1) Exclusive possession and control. The lessee shall have *exclusive possession and control of leased equipment* during all periods when the equipment is operated under

the lease. Such exclusive possession and control shall extend also to the drivers of leased equipment." (Emphasis added.) 92 Ill. Adm. Code 1360.40(b)(1) (1993).

But it is unclear whether Land Truck is subject to this code provision, which only applies to carriers "regulated by the Illinois Commerce Commission." 92 Ill. Adm. Code 1360.10(a)(1) (1987). Under the Illinois Commercial Transportation Law (625 ILCS 5/18c-1101 *et seq.* (West 2010)), the Commission's jurisdiction over "for-hire transportation by motor carrier" is limited to intrastate commerce. 625 ILCS 5/18c-1201 (West 2010); *Canal Insurance v. A&R Transportation & Warehouse, LLC*, 357 Ill. App. 3d 305, 312-13 (2005). It is unclear from the record whether Land Truck and Morales's business involves intrastate or interstate commerce. Thus, we cannot say that the above section of the Administrative Code applies. See *Triple 7 Illinois, LLC v. Gaming & Entertainment Management-Illinois, LLC*, 2013 IL App (3d) 120860, ¶ 22 ("interpreting the regulations to apply to agreements between nonlicensed entities would violate the right of private parties to freely contract").

¶ 27 Appellants urge the court to follow Canal Insurance Co. v. United States Fire Insurance Co., an unpublished order from the United States District Court for the Southern District of Alabama. Canal Insurance Co. v. United States Fire Insurance Co., No. 04-0094-KD-C (S.D. Ala. May 26, 2006) (hereinafter, *Canal*). We decline. There, a semitruck lost a break drum, which flew through the windshield of a nearby vehicle, striking one of the occupants who died several days later. A trucking company owned the semitruck, and a peanut company owned the trailer. The trucking company's insurer filed a suit for declaratory judgment, arguing that a "Truckman's Endorsement" limited coverage. That endorsement (similar to the one here) read, " 'no coverage is extended to any person, firm or organization using the described automobile pursuant to any lease, contract for hire, bailment, rental agreement, or any similar contract or agreement.' " *Id.* The federal district court held under Georgia law that the agreement between the trucking and peanut companies was a service contract, and not a lease or rental agreement.

¶ 28 The court noted that federal law might have defined the agreement as a "lease." The statute defines such a lease as a between a truck owner and "an authorized carrier." 49 C.F.R. § 376.2(e) (2012). But the insurer offered nothing to prove that the peanut company was an authorized motor carrier under the statute and regulations. In addition the court noted that the agreement did not require the peanut company to take exclusive possession of any truck, which was a required term of the lease. 49 C.F.R. § 376.12(c)(1) (2012). The court reasoned that, because the contract between the trucking and peanut companies was a service contract, the endorsement did not apply.

¶ 29 The *Canal* case is distinguishable in that no evidence identified the peanut company as a DOT-regulated authorized carrier. It was therefore not subject to DOT regulations. Unlike *Canal*, no one disputes that Land Truck is an authorized carrier, as acknowledged in the owner operator contract. Moreover, the contract incorporates DOT requirements into the agreement. No similar provision appears in the *Canal* case.

¶ 30 Appellants next argue that the term "rented" is ambiguous. Ambiguity exists where language is subject to more than one reasonable interpretation. *Gaudina v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131264, ¶ 18. Appellants fail to explain what definitions of the term "rented" lead to multiple, reasonable interpretations of coverage. We cannot discern any definitions of "rented" that would lead to differing outcomes regarding coverage. Thus, appellants' argument is not well taken.

¶ 31    Even if the owner operator agreement is read in light of DOT regulations, according to appellants that simply indicates Morales "leased" his vehicle to Land Truck, as federal law does not describe the document as a "rental" agreement. They note that Argonaut's policy uses the terms "lease" and "rent" separately, and that the terms must be interpreted differently to avoid surplusage.

¶ 32    But appellants fail to cite any sources that define these terms differently or that define "lease" as requiring exclusive possession while "rent" does not. We acknowledge that Argonaut's policy uses both terms, and while courts endeavor to avoid reading a contract to create surplusage, it happens nevertheless. *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 159 (1999). Out of an abundance of caution, contract drafters often string synonyms or closely related words together to prevent a narrow interpretation. If courts were to attempt to interpret every synonym differently, the strain would produce absurdities. See *Rubin v. Laser*, 301 Ill. App. 3d 60, 68 (1998) ("Courts construe contracts so as to avoid absurd results."). Generally, when referring to types of contracts, "rent" and "lease" are synonymous, and we detect no meaningful differences in their definitions. See Black's Law Dictionary 970 (9th ed. 2009) (defining "lease" as "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu. rent"); Webster's Third New International Dictionary 1923 (1993) (defining "rent" as "to take and hold under an agreement to pay rent").

¶ 33    Appellants next argue that, even if regulations must be used to interpret the owner operator contract as giving exclusive control of Morales's vehicle to Land Truck, the regulations are irrelevant because, in reality, Land Truck did not control Morales's vehicle. In support, appellants point to *Roberson v. Industrial Comm'n*, 225 Ill. 2d 159 (2007). In *Roberson*, a trucker operated his own truck under contract with a federally regulated motor carrier. *Id.* at 162-63. The contract expressly stated that under federal regulations, the carrier had "exclusive possession, control and use of the" truck, and "assumed complete responsibility for" its operation. (Internal quotation marks omitted.) *Id.* at 162. The contract also labeled the trucker as an independent contractor, and gave the trucker great leeway in satisfying the contractual duties. *Id.* at 163.

¶ 34    The trucker was injured while unloading freight for the carrier and filed a worker's compensation claim. *Id.* at 164-66. The arbitrator found that as an independent contractor, the trucker was ineligible for compensation. *Id.* at 170. The Industrial Commission reversed, finding that the trucker was an employee and noting that the carrier had the right to exclusive possession and use of the trucker's vehicle. *Id.* at 172. The supreme court affirmed, finding the conclusion was not against the manifest weight of the evidence. *Id.* at 187.

¶ 35    Appellants and the dissent argue that, under *Roberson*, regulations between motor carriers and truckers do not alter the contractual relationship between the two. We disagree. *Roberson* does not stand for the proposition that federally mandated language in the owner operator contract is meaningless. As the supreme court noted, "the regulation requiring a motor carrier to have exclusive possession, control, and use of leased equipment does not mandate that the driver is an employee for all purposes. *** Compliance with federal regulations is merely a factor that may be considered in a common law analysis of whether a driver is an employee of a trucking company." *Id.* at 178. The *Roberson* court concluded that courts may consider federally mandated language included in the contract between a motor carrier and a trucker (among many other factors) to determine whether the trucker is an employee or independent

contractor. *Id.* at 184-87. Accordingly, this language is not meaningless, and use of federal regulations to interpret the owner operator agreement is proper.

¶ 36    Even if this court reads federal regulations into the agreement between Land Truck and Morales, appellants contend those terms create a "legal fiction" and do not reflect whether Land Truck in fact had exclusive control over Morales's vehicle. (A "legal fiction" is a rule that assumes "that something is true even though it may be untrue." Black's Law Dictionary 976 (9th ed. 2009).) In support, appellants cite *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28 (1975). There, the Supreme Court noted that an owner who leases a truck to a motor carrier maintains an "aspect of control" over the truck. *Id.* at 39. But the Court described that as "ministerial control," and not the kind of control that federal regulations were concerned with. *Id.* Rather, the concern

> "was with operating authority, with routes and destinations and classes of freight, with the integrity of certifications, and with that ultimate control in the lessee [motor carrier] that makes and keeps it responsible to the public, the shipper, and the Commission. The Commission observed:
>
>> It now seems to be accepted that when an authorized carrier furnishes service in vehicles owned and operated by others, he must control the service to the same extent as if he owned the vehicles, but need control the vehicles only to the extent necessary to be responsible to the shipper, the public, and this Commission for the transportation." (Internal quotation marks omitted.) *Id.*

Legal fiction or not, if a motor carrier opts not to exercise its right to control the vehicle, it does so at its own peril, as its responsibility for the vehicle does not abate. See *Carl Subler Trucking, Inc. v. Splittorff*, 482 N.E.2d 295, 297 (Ind. Ct. App. 1985) ("regulations require that carriers operating under permits exert actual control over leased equipment; the borrowed drivers and the carriers are not permitted to circumvent such regulation by contract"); *Hershberger v. Home Transport Co.*, 103 Ill. App. 3d 348, 352 (1982) (noting one goal of regulation which imposes responsibility on carrier includes preventing carriers from avoiding safety standards by leasing equipment from non-regulated carriers). Regardless of whether Land Truck chose to exercise its right to control Morales's vehicle, the terms giving it those rights make the owner operator contract a rental agreement.

¶ 37    Appellants next maintain that Argonaut failed to prove Morales rented his vehicle to Land Truck. Appellants assert that there are no "extrinsic facts" suggesting that Morales gave possession and control of his vehicle to Land Truck. But appellants point to no case law requiring extrinsic facts be found in the owner operator agreement, nor do they explain why extrinsic facts are necessary to establish that Land Truck had exclusive control over Morales's vehicle. The term "rented" typically refers to a contract. Accordingly, the agreement between Morales and Land Truck sufficiently proves the rental of the vehicle.

¶ 38    Appellants and the dissent further maintain that DOT regulations should not be used to guide an insurance coverage dispute. In support, they cite *Carolina Casualty Insurance Co. v. Insurance Co. of North America*, 595 F.2d 128 (3d Cir. 1979). The dissent puts much stock in the *Roberson* court's citing *Carolina Casualty* for the proposition that terms inserted in private contracts by federal regulations do not alter obligations " 'under contracts allocating financial risk among private parties.' " (Emphasis omitted.) *Roberson*, 225 Ill. 2d at 178 (quoting *Carolina Casualty*, 595 F.2d at 138).

¶ 39    The *Carolina Casualty* case involved a motor carrier that entered into a trip-lease contract with a truck owner. *Carolina Casualty*, 595 F.2d at 129-31. When the trucker was involved in a car accident, the trucker's insurer filed a declaratory judgment action against the carrier's insurer to determine which policy was primary. *Id.* at 130. The trial court held that, because the DOT "responsibility-and-control" regulations made the carrier liable to the injured parties, the carrier and its insurer were primarily liable. *Id.* at 132. The court of appeals disagreed, holding that courts should not rely solely on those regulations when determining which policy is primary. *Id.* at 138. Instead, the court "should consider the express terms of the parties' contracts." *Id.*

¶ 40    In *Carolina Casualty*, the issue was whether the carrier's or the trucker's insurance was primary. Neither policy contained a nontrucking endorsement like the one here. Absent the endorsement, we agree that these DOT regulations would not control the interpretation of which policy is primary. The question of whether a policy is primary versus excess may sometimes be resolved by referencing the policy terms alone. See, *e.g.*, *Certain Underwriters at Lloyd's, London v. Central Mutual Insurance Co.*, 2014 IL App (1st) 133145, ¶¶ 10-12.

¶ 41    But we disagree that either *Roberson* or *Carolina Casualty* stands for the proposition that DOT regulations are irrelevant in an insurance coverage dispute. Our inquiry differs from that of *Carolina Casualty*. Argonaut's nontrucking endorsement conditions coverage on the type of relationship between Morales and Land Truck at the time of the accident. That is to say, whether the contract between Land Truck and Morales constitutes a rental agreement. When one party takes exclusive possession, control, and use of a vehicle in exchange for money, that is a rental agreement. The fact that the source of the possession-and-control terms is federal law is irrelevant to our interpretation of the endorsement. But federal law does control our interpretation of the owner operator agreement because that agreement is "subject to" DOT regulations.

¶ 42    Our analysis aligns with the purpose of Argonaut's bobtail insurance policy, providing coverage when Morales is using his truck for his own purposes, not when he is renting it to Land Truck. For the latter circumstances, federal law requires Land Truck to procure its own insurance to cover Morales when Land Truck is using his vehicle. 49 C.F.R. § 376.12(j)(1) (2012) ("The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to [Federal Motor Carrier Safety Administration] regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance.").

¶ 43    Accordingly, the "Trucker–Insurance for Non-Trucking Use" endorsement applies, and Argonaut has no duty to defend or indemnify Morales.


¶ 44                               Land Truck's Status as Insured

¶ 45    As a threshold issue, Argonaut argues that the denial of a motion for summary judgment is not appealable. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 357 (1999). This is true, but not here where the case is disposed of on cross-motions for summary judgment. *Ruby v. Ruby*, 2012 IL App (1st) 103210, ¶ 34.

¶ 46    Appellants assert that Land Truck is an insured under Argonaut's policy. We disagree.

¶ 47     Included under the "Who Is An Insured" section of Argonaut's policy is "[a]nyone liable for the conduct of an 'insured' described above but only to the extent of that liability." But, the "Insurance for Non-Trucking Use" endorsement adds, "Who Is An Insured does not include anyone engaged in the business of transporting property by 'auto' for hire who is liable for your conduct."

¶ 48     Appellants argue that the term "for hire," like the term "rented," requires the exercise of control and the right to direct the use of the vehicle. See *Selective Way Insurance Co. v. Travelers Property Casualty Co. of America*, 724 F. Supp. 2d 520, 526 (E.D. Pa. 2010) ("The majority of courts that apply the plain meaning of 'hire' when interpreting policies like the one at issue have found the term to contain an element of control."). As already noted, the owner operator agreement and applicable federal law require Land Truck to control and possess Morales's vehicle. Under the agreement, Land Truck is "engaged in the business of transporting property by 'auto' for hire." Thus, the endorsement applies. *Sprow v. Hartford Insurance Co.*, 594 F.2d 418, 422 (5th Cir. 1979) ("for a vehicle to constitute a hired automobile, there must be a separate contract by which the vehicle is hired or leased to the named insured for his exclusive use or control").

¶ 49     Accordingly, Argonaut has no duty to defend or indemnify Land Truck under Morales's policy.

¶ 50     Affirmed.

¶ 51     JUSTICE MASON, dissenting.

¶ 52     Because I do not agree that Argonaut has sustained its burden, under the unambiguous language of its policy, to demonstrate the applicability of the exclusion it relies on, I respectfully dissent.

¶ 53     The majority acknowledges that the terms of the owner operator contract between Morales and Land Truck contradict the conclusion that Morales agreed to "rent" his truck to Land Truck. That contract clearly provides that Morales retains exclusive possession and control over the truck, which is clearly inconsistent with the notion that the contract constitutes an agreement to rent the truck to Land Truck.

¶ 54     The legal effect of incorporation of the federal regulations into the owner operator contract is to render Land Truck liable for Morales's operation of his truck, but that does not lead to the conclusion that we should construe this private agreement as something other than it is. In other words, despite the clear provisions of the private contract between Land Truck and Morales that unambiguously provide that Morales shall have exclusive control over the operation of the truck, Land Truck's liability as a common carrier is governed by federal law and thus Land Truck is precluded from contending that it is not liable for Morales's conduct because he is an independent contractor. But this conclusion does not either (1) compel us to rewrite the owner operator contract or (2) control the interpretation of the terms of Argonaut's insurance policy in which it agreed to insure Morales as a named insured and the truck as a scheduled vehicle.

¶ 55     Whether Argonaut must defend Morales depends on whether, under the terms of its policy measured against the owner operator contract, Argonaut has established the applicability of the exclusion for a covered auto "while used in the business of anyone to whom the auto is rented."

And because it is clear that the terms of the owner operator contract refute Argonaut's contention that Morales "rented" his vehicle from Land Truck, I believe Argonaut's argument should be rejected.

¶ 56     The purpose of the federal regulations providing for the liability of common carriers was recognized by our supreme court in *Roberson v. Industrial Comm'n*, 225 Ill. 2d 159 (2007). In that case, Roberson was injured while unloading steel coils delivered for P.I. & I. Motor Express (P.I. & I.) from a truck Roberson owned. P.I. & I. contended that pursuant to an agreement with Roberson, the latter was an independent contractor who could not be deemed an "employee" for purposes of claiming workers compensation benefits. The supreme court ultimately disagreed with P.I. & I., not because federal regulations required P.I. & I., as a common carrier, to have "exclusive possession, control, and use of the equipment" for the duration of the lease, but because the particular facts and circumstances of Roberson's relationship with P.I. & I. created an employer-employee relationship.

¶ 57     In the course of its opinion, the supreme court in *Roberson* discussed the purpose of the federal regulations at issue here. In particular, the court noted that the regulations were prompted by a decades-old practice of common carriers to shield themselves from liability for their drivers' negligence by leasing trucks from independent contractors. *Id.* at 176. "Such arrangements invariably led to abuses that threatened public safety, as unscrupulous motor carriers leased inexpensive, and unsafe, equipment from shallow-pocket drivers." *Id.* The federal regulations, as ultimately enacted, "prevent[ed] motor carriers from escaping liability to injured persons by claiming that their drivers were independent contractors, rather than employees." *Id.* at 177.

¶ 58     But notwithstanding regulations requiring motor carriers to have exclusive possession, control and use of leased equipment, the *Roberson* court concluded that the regulations did not mandate treating the driver as an employee for all purposes, stating, " '[w]hile a lessee cannot free itself of its federally imposed duties when protection of the public is at stake, the federal requirements are not so radically intrusive as to absolve lessors *** of otherwise existing obligations under applicable state tort law doctrines *or under contracts allocating financial risk among private parties*.' " (Emphasis in original.) *Id.* at 178 (quoting *Carolina Casualty Insurance Co. v. Insurance Co. of North America*, 595 F.2d 128, 138 (3d Cir. 1979)). Thus, the court concluded that Roberson and P.I. & I. were free to "structure their relationship as they see fit, provided they do not neglect the requirements of federal law." *Id.*

¶ 59     As applied in the context of this case, the reasoning of *Roberson* mandates a finding that Land Truck and Morales were free to structure their relationship in any way that did not circumvent federal regulations requiring Land Truck to be responsible for Morales's operation of the truck. And it is clear that they did not. Notwithstanding the provisions of the owner operator contract that vested exclusive control of the truck in Morales, the parties agreed to incorporate federal regulations applicable to Land Truck as a common carrier. Incorporation of the federal regulations thus preserves, in the interest of public safety, Land Truck's liability for Morales's operation of the truck, but does not alter the private contractual relationship between Land Truck and Morales, pursuant to which Morales retained possession and control of the truck.

¶ 60     Nothing in the federal regulations renders the terms of the owner operator agreement "illegal," as Argonaut contends; rather, those regulations simply require that the terms of the otherwise enforceable agreement cannot be used by Land Truck to escape responsibility for

- 11 -

injuries caused by Morales's operation of the truck in furtherance of Land Truck's business. Further, because pursuant to the terms of the owner operator contract, Morales did not "rent" his truck to Land Truck, the exclusion relied on by Argonaut does not apply.

¶ 61 Argonaut contends that the purpose of the policy of insurance issued to Morales is consistent with the interpretation of the owner operator agreement adopted by the trial court. In particular, Argonaut asserts that its "Truckers–Insurance for Non-Trucking Use" endorsement provides only limited coverage "during those times when possession of the vehicle, and any liability for its operation, remain with the owner-insured itself." Argonaut reasons that because Land Truck remains responsible for damages resulting from Morales's operation of the truck, Morales did not need insurance while traveling to pick up a load for Land Truck.

¶ 62 But while this may have been Argonaut's intent in drafting the endorsement, this is not what the endorsement says. The endorsement provides that Argonaut's agreement to pay "all sums" Morales must pay "as damages" because of "bodily injury" caused by an "accident" does not apply to his truck "while used to carry property in any business" or "while used in the business of anyone to whom [the truck] is rented." Because the truck was not "rented" to Land Truck according to the plain terms of the owner operator contract and because Morales was on his way to pick up a load when the accident occurred, his truck was not then being used to "carry property" either. In any event, Argonaut has not invoked the "while used to carry property" clause of its endorsement. While Argonaut certainly could have drafted an exclusion that limited its insuring agreement in the manner it urges on appeal (*e.g.*, "when used in the business of anyone subject to state or federal regulation as a common carrier"), the exclusion included in Morales's policy does not accomplish this result. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 117 (1992) ("[i]f the insurer had desired to restrict coverage to only those suits seeking legal, compensatory damages, it could have easily included among its exclusionary provisions an exclusion pertaining to the costs of complying with mandatory injunctions").

¶ 63 I do not believe the decision in *Clarendon National Insurance Co. v. Medina*, 645 F.3d 928 (7th Cir. 2011), compels a different result. The driver of the truck involved in the accident in Medina was not the owner of the truck (which was owned by his wife), but he signed the agreement with the common carrier. On appeal, the husband and wife contended that the agreement with the common carrier could not be a lease because the owner of the vehicle did not execute it. The Seventh Circuit rejected this contention finding that the wife gave her husband permission to enter into the agreement with the common carrier. The *Medina* court also concluded that the agreement between the driver and the common carrier was a lease as a matter of law. *Medina* did not address the terms of the agreement between the driver and the common carrier and, in particular, did not discuss whether the agreement in that case contained terms similar to those here, *i.e.*, providing that the driver retained "exclusive possession and control" of the truck, terms that are inconsistent with construction of the owner operator contract as an agreement to lease Morales's truck to Land Truck. Therefore, while I agree with the *Medina* court's conclusion that, as a matter of law and for purposes of Land Truck's liability to injured parties, the owner operator contract must be deemed to be a lease despite its terms, I do not believe it appropriate to completely disregard those terms in determining Argonaut's responsibility to defend and potentially indemnify its insured.

¶ 64 Because the provisions of the owner operator contract do not constitute an agreement by Morales to "rent" his vehicle to Land Truck, it is unnecessary to address whether the term

"rent" is ambiguous and whether any ambiguity must be construed in favor of coverage under Argonaut's policy. I do note that several provisions of Argonaut's policy use "rent" and "lease" in the same paragraph, but the endorsement at issue here does not, thus lending credence to the appellants' argument that the terms are not necessarily synonymous. Further, because the trial court denied summary judgment to appellants on count II of Argonaut's complaint, which invoked a provision of the endorsement excluding from the definition of an "insured" under the Argonaut policy "anyone engaged in the business of transporting property by 'auto' for hire who is liable for your conduct," I would not address this issue and instead leave that to the trial court on remand.

¶ 65     For these reasons, I would reverse the trial court's award of summary judgment to Argonaut, direct that summary judgment on the applicability of paragraphs A and B of the "Truckers–Insurance for Non-Trucking Use" endorsement be entered in favor of Morales and Land Truck, and remand for further proceedings as to whether Land Truck qualifies as an additional insured under Argonaut's policy.