# Illinois Official Reports

## Appellate Court

---

### *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712

---

| | |
|---|---|
| Appellate Court Caption | THE BANK OF NEW YORK MELLON, f/k/a The Bank of New York, as Trustee for RBSGC Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 205-RPI, Plaintiff-Appellee, v. STEVEN SCOTT ROGERS, a/k/a Steven S. Rogers; DANA M. ROGERS; DAVID M. MEIXNER; PAMELA S. MEIXNER; THE KANE COUNTY TEACHERS CREDIT UNION; CATALYST INTERVENTIONS, LLC; JON HOFFMAN LUMBER; THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants (David M. Meixner and Pamela S. Meixner, Defendants-Appellants). |
| District & No. | Second District <br> Docket No. 2-15-0712 |
| Filed | September 27, 2016 |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 11-CH-448; the Hon. Bradley J. Waller, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Randy K. Johnson, of Law Office of Randy K. Johnson, of West Dundee, and Amanda T. Adams, of Law Office of Amanda T. Adams, of DeKalb, for appellants. <br><br> Mayer Brown LLP, of Chicago (Charles M. Woodworth, Michelle V. Dohra, and Lucia Nale, of counsel), for appellee. |

| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Burke and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1  Defendants David and Pamela Meixner (the Borrowers) appeal from the trial court's grant of a summary judgment, a judgment of foreclosure, and a confirmation of sale in favor of plaintiff, the Bank of New York Mellon (BNY Mellon). On appeal, the Borrowers argue that the trial court erred (1) when, during the hearing on BNY Mellon's motion for summary judgment, the court admitted an affidavit and business records that lacked proper foundation and authentication under Illinois law and (2) when it determined that BNY Mellon had standing to institute this lawsuit because it was a holder in due course of the original note and because the loan modification agreement (Modification Agreement) was not a negotiable instrument and thus did not have to be indorsed or otherwise negotiated. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3  The record reflects that in 2003 the Borrowers, along with Steven Scott Rogers and Dana M. Rogers,[1] obtained from Old Second Mortgage Company (Old Second) a mortgage for $164,714, secured by their property. Mortgage Electronic Registration Systems, Incorporated (MERS), was the original mortgagee and nominee of Old Second. After originating the loan, Old Second specially indorsed the note to Washington Mutual. Washington Mutual later converted the note into bearer paper by attaching an allonge with a blank indorsement. The language of the allonge indicated that it was "attached to and made a part of that certain Note or Bond, or Lost Note Affidavit in lieu of that certain Note or Bond."

¶ 4  In 2005, Washington Mutual agreed to modify the Borrowers' mortgage and note after they fell behind on their mortgage payments. The Modification Agreement began by explicitly stating that it "amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the 'Security Instrument')" and "(2) the Note, *** as secured by the Security Instrument." The agreement provided, among other things, that "[t]he Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument (the mortgage) including without limitation the Borrower's covenants and agreement to make all payments of taxes, insurance premiums, assessments, escrow items [and] impounds." Under the terms of the Modification Agreement, the total indebtedness was increased to $171,987.05. After the parties entered into the Modification Agreement, the Borrowers' mortgage and note were transferred to BNY Mellon.

¶ 5  Five years later, the Borrowers stopped making their mortgage payments. On August 9, 2011, BNY Mellon filed a foreclosure complaint, attaching copies of the mortgage, the

---

[1]Steven and Dana Rogers did not file a notice of appeal, and therefore they are not parties to this proceeding.

blank-indorsed note, and the Modification Agreement. The Borrowers and the Rogerses were all served.

¶ 6 On February 2, 2012, the Borrowers and Dana Rogers filed a combined motion to dismiss under sections 2-615, 2-619, and 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619, 2-619.1 (West 2010)). In the motion, they claimed that BNY Mellon lacked standing because the mortgage and the Modification Agreement were not indorsed. After a hearing, the trial court denied the motion to dismiss without prejudice.

¶ 7 On July 10, 2012, the Borrowers filed a verified answer. The answer included the affirmative defense that BNY Mellon lacked standing, stating that there was "no written instrument presented by [BNY Mellon] to show [that BNY Mellon was the] holder in due course of the second mortgage note, refinancing the property, from Washington Mutual Bank." BNY Mellon filed a reply to the affirmative defense and denied that it lacked standing. It stated that it held "the note which is endorsed to bearer" and that a copy of that note was attached to the complaint.

¶ 8 BNY Mellon moved for summary judgment and a judgment of foreclosure. In support of its motion, it filed an "Affidavit of Amounts Due and Owing." The affidavit was executed by Tonya Feaster, a vice president of loan documentation at Wells Fargo Bank, as servicing agent to BNY Mellon. The affidavit included copies of two computerized business records from Wells Fargo, a "Judgment Quote," and an "Account History" for the Borrowers' loan. In the affidavit, Feaster attested to her personal knowledge of the matters in the affidavit, based on her experience at Wells Fargo and her review of the Borrowers' file. She said that BNY Mellon held the blank-indorsed note and that Wells Fargo acquired the loan servicing rights from Washington Mutual on December 1, 2006, at which time the loan was current. She stated that the "Judgment Quote" and the "Account History" were generated and maintained in the ordinary course of Wells Fargo's business, using industry-standard software, Mortgage Servicing Platform. Based upon these business records, Feaster stated that as of March 7, 2014, the Borrowers owed $212,319.87, which included interest accrued from October 1, 2010.

¶ 9 The Borrowers filed a response to the motion for summary judgment. In their response they argued that, although BNY Mellon had claimed that it possessed the original note, that note had been refinanced and BNY Mellon had never shown the Borrowers a copy of the original refinanced note indorsed in blank.

¶ 10 BNY Mellon replied and said that it had proven its standing based upon the original blank-indorsed note. It also noted that the Borrowers' liability was uncontested, given certain admissions in their answer as well as Feaster's uncontroverted affidavit as to the amounts due and owing.

¶ 11 At the hearing on the motion for summary judgment, BNY Mellon argued that it had standing because it possessed the original note that was indorsed in blank. Counsel for BNY Mellon then handed the trial court the original note and mortgage. It also claimed that the Borrowers had not submitted any counteraffidavits to disprove any allegations of their default. The only matter the Borrowers raised was standing, and based upon BNY Mellon's possession of the original note, it had standing.

¶ 12 The Borrowers argued that they had not stipulated to a default and that in their answer to the complaint, they had specifically denied that they were in default. Also, BNY Mellon's argument that summary judgment should be granted because the Borrowers had not produced proof of payment erroneously placed the burden of proof on them. The Borrowers claimed that

BNY Mellon admitted that the refinanced note governed the terms of this transaction and that the refinanced note amended the original note. The refinanced note was the Modification Agreement, and the first page of that agreement said that it amended the original note from September 2003. However, the Modification Agreement included no indorsement, let alone an indorsement in blank. The Modification Agreement was a negotiable instrument within the meaning of the Uniform Commercial Code (UCC) (810 ILCS 5/1-101 *et seq.* (West 2010)). Specifically, it was payable to a definite party at a definite time for a specific amount, and it included no other consideration. Therefore, the refinanced note had no indorsement and mere possession of it, as a negotiable instrument not indorsed by a payee, was not evidence of legal or equitable title.

¶ 13    The Borrowers also argued that there were still issues as to default and the business records. Feaster's affidavit was from Wells Fargo, but there was no affidavit from Washington Mutual showing when and how much the Borrowers had defaulted. The burden is on the possessor of a note to prove equitable title. Also, only a mortgagee can foreclose on property, and pursuant to Illinois law, a mortgagee is defined as the holder of indebtedness secured by a mortgage or a successor. Since BNY Mellon had not shown proof that the Borrowers had defaulted to Washington Mutual, and because the Modification Agreement, according to its own language, amended and supplemented the original note, BNY Mellon had not established a default or that it had standing in this matter.

¶ 14    With regard to whether the Borrowers were in default, BNY Mellon argued that its complaint alleged that the Borrowers had been in default since November 2010. Also, the Borrowers did not submit a counteraffidavit to show that they were not in default. The Borrowers responded and again said that it was not their burden at the hearing on summary judgment to prove that they were not in default. Specifically, the Borrowers argued:

"MS. ADAMS [(the Borrowers' counsel)]: [Counsel for BNY Mellon is] saying that my clients have a burden on summary judgment to come forward with proof of payment, and our position is that based on Illinois case law interpreting summary judgment, it is the burden of the movant to prove that there is no triable issue as to payment.

And if the plaintiffs have business records to show with a foundation under Rule 902.11 that my clients have not paid specifically when they defaulted, then they're entitled to judgment, but that's the purpose of a trial. The purpose of summary judgment is to show that there's no issue as a matter of fact and a matter of law."

¶ 15    The trial court then asked the Borrowers whether it was their position that every defendant in a foreclosure action who was facing a summary judgment motion simply had to deny default in order to defeat the motion. Counsel for the Borrowers then said:

"No. But right now we do not have any business records from Washington Mutual Bank where the payments are supposed to go, according to the note that currently governs, showing that my clients did not mail payment in. And the exhibit they attach is something from Wells Fargo saying that it's transmitted by third parties with knowledge, and I really can't tell what those records mean or if there's a default."

¶ 16    On September 16, 2014, the trial court entered summary judgment in favor of BNY Mellon. On October 9, 2014, the trial court entered a judgment of foreclosure. The property was sold at a judicial sale on February 12, 2015. BNY Mellon moved to confirm the sale, and the Borrowers moved to deny the motion. In their motion opposing the confirmation of the

sale, the Borrowers contended that the entry of summary judgment should be reconsidered because (1) "records of non-payments should have come from Washington Mutual *** not Wells Fargo" and (2) BNY Mellon lacked standing because "the amended note, the Modification Agreement, governing this transaction was never indorsed in blank."

¶ 17    On May 22, 2015, the trial court confirmed the judicial sale. A week later, the Borrowers moved to reconsider the confirmation. In their motion to reconsider, they reiterated their arguments that the Modification Agreement was a negotiable instrument that should have been indorsed and that Wells Fargo's records could not be used to establish default because Washington Mutual was the lender named in the Modification Agreement.

¶ 18    On June 19, 2015, a hearing was held on the Borrowers' motion to reconsider. At the hearing, the Borrowers' counsel suggested for the first time that Feaster had failed to lay an adequate foundation for the issue of "whether the computer software program was working properly at the dates and times in question." Specifically, counsel argued:

> "MS. ADAMS: Well, the Wells Fargo affidavit was based on computer records and there's nothing in the affidavit that establishes that how the—whether the computer was working properly, whether the software was accurately recording that sort of thing. ***
>
> * * *
>
> *** I think it's a legal conclusion that those records were regularly kept in the course of business because of the fact that they are computer records and the—there is no testimony about the computer software and that sort of thing. We believe that it was regularly kept in the course of business, et cetera, begs the question and fails to establish a proper foundation as far as that goes ***."

¶ 19    In denying the Borrowers' motion, the trial court said that it would address the substance of their arguments for the benefit of this court but that it thought a strong argument could be made that the motion was not timely filed because a number of their arguments were not raised before the summary judgment and judgment of foreclosure were entered. The court then said that Feaster had established Wells Fargo's relationship to BNY Mellon and that the affidavit set forth the appropriate provisions that were required under Illinois Supreme Court Rule 236 (eff. Aug. 1, 1992).

¶ 20    The trial court also said, "based upon my review of the four corners of the document it essentially incorporates the terms of the underlying mortgage and the note and modifies those terms but only to the extent set forth in the Modification Agreement, so I don't believe [that the Borrowers' counsel's] argument comports with applicable case law as—well, let me say this. I don't think it comports with the definition of a negotiable instrument so, therefore, the Court rejects that argument." The Borrowers timely appealed.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, the Borrowers first argue that the trial court erred in admitting Feaster's affidavit with computerized business records attached to prove that they were in default on their loan, when those documents lacked proper foundation and authentication. In their second argument, the Borrowers argue that the trial court erred "in its determination that the Modification Agreement failed to constitute a negotiable instrument that needed to be specifically indorsed to [BNY Mellon] or indorsed in blank as the basis for [BNY Mellon's]

- 5 -

request for foreclosure and to demonstrate its standing to bring the action." Since the Borrowers' second argument implicates standing, which would call for a dismissal of this case if proven, we will address their second argument first.

¶ 23                    A. Standard of Review

¶ 24    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). The trial court's ruling on a motion for summary judgment is subject to *de novo* review. *Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14.

¶ 25    However, the issue of whether documents are admissible as business records is within the sound discretion of the trial court, and therefore this court reviews that decision for an abuse of discretion. *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 25. A trial court abuses its discretion if it commits an error of law or where no reasonable person would take the view adopted by the court. *Id.* ¶ 18.

¶ 26                B. BNY Mellon's Standing to Foreclose

¶ 27    The Borrowers argue that the Modification Agreement is a negotiable instrument pursuant to section 3-104(a) of the UCC. 810 ILCS 5/3-104(a) (West 2010). Thus, they argue, because in Illinois a plaintiff seeking to enforce a mortgage must demonstrate that it holds the mortgage or note that is the subject of the foreclosure action, BNY Mellon failed to demonstrate a *prima facie* case for standing in its complaint and motion for summary judgment when it did not demonstrate its status as the holder of the Modification Agreement. The Borrowers concede that no Illinois case directly addresses this issue, but they note that a case from New Mexico, *Bank of New York v. Romero*, 320 P.3d 1 (N.M. 2014), supports their position.

¶ 28    In response, BNY Mellon argues that there is no doubt that it has physical possession of the Borrowers' blank-indorsed note because, in its uncontradicted affidavit in support of summary judgment, Feaster swore that BNY Mellon had possession of the note, which had been duly indorsed. Also, BNY Mellon produced the original note for the trial court at an earlier proceeding, and it submitted the original note and the mortgage before the court entered summary judgment in its favor. With regard to the Modification Agreement, BNY Mellon argues that the note is not a negotiable instrument, so it does not need to be indorsed or otherwise negotiated. It contends that neither the UCC nor the decision from New Mexico, the Borrowers' sole supporting authority, supports the Borrowers' argument that the Modification Agreement is a negotiable instrument.

¶ 29    In their reply brief the Borrowers cite a Texas case, *Burns v. Resolution Trust Corp.*, 880 S.W.2d 149 (Tex. App. 1994), to support their argument that the Modification Agreement is a negotiable instrument.

¶ 30    A plaintiff's standing to sue must be determined as of when the suit is filed. *Bayview Loan Servicing, LLC v. Cornejo*, 2015 IL App (3d) 140412, ¶ 12. A plaintiff's lack of standing negates his cause of action and requires dismissal of the proceedings. See *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004). However, a plaintiff is not required to prove standing in its pleadings or allege facts in support of standing in its pleadings. *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004). Once a plaintiff has filed a complaint, a defendant may raise the

plaintiff's lack of standing as an affirmative defense. *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 24. The defendant has the burden of pleading and proving the plaintiff's lack of standing. *Id*. In a foreclosure action, attaching the note to the complaint is *prima facie* evidence that the plaintiff owns the note. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 24.

¶ 31    We initially note that in their opening brief, the Borrowers say that they "direct the thrust of their challenge here only to the Modification Agreement which Plaintiff never received endorsed in blank nor received it specifically endorsed." However, they then argue that they find it necessary to address the original note and its "problematical alleged endorsement in blank." They state that the note itself is not indorsed in blank but that an allonge has been attached to the note "purportedly signed by an agent of Washington Mutual, which claims to endorse it in blank." They also refer to the language in the allonge and allege that the allonge was not permanently affixed to the note.

¶ 32    In response, BNY Mellon argues that the Borrowers have forfeited this argument because they did not raise this issue before the trial court. We agree with BNY Mellon. *Fauley v. Metropolitan Life Insurance Co.*, 2016 IL App (2d) 150236, ¶ 55 (issues not raised in the trial court are forfeited and may not be raised for the first time on appeal). Even if we chose to overlook the Borrowers' failure to raise this issue below, it would still be forfeited because they do not cite any authority to support their argument, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Jan. 1, 2016) (appellant's brief shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on). For these reasons, we will not consider this issue on appeal.

¶ 33    The Borrowers next argue that the original note was amended and superseded by the Modification Agreement, another negotiable instrument, but that the Modification Agreement was not indorsed in blank or indorsed to BNY Mellon. Because the mortgage follows the note, they claim, BNY Mellon failed to prove its *prima facie* case that it owned the mortgage obligation as amended and superseded by the Modification Agreement.

¶ 34                    1. Article 3 of the Uniform Commercial Code

¶ 35    The Borrowers contend that the trial court erred in holding that the Modification Agreement was not a negotiable instrument, when the plain language of section 3-104 of the UCC demonstrates otherwise. 810 ILCS 5/3-104 (West 2010).

¶ 36    A note is a negotiable instrument as defined by section 3-104 of the UCC. *Id.* A negotiable instrument is an unconditional promise to pay a fixed amount of money, if it is "payable to bearer or to order at the time it is issued or first comes into possession of a holder." 810 ILCS 5/3-104(a)(1) (West 2010). Section 3-205 of the UCC states that "[w]hen indorsed in blank, an instrument becomes payable to [the] bearer and may be negotiated by transfer of possession alone until specially indorsed." 810 ILCS 5/3-205(b) (West 2010). It is well settled that possession of bearer paper is *prima facie* evidence of title thereto and is sufficient to entitle the plaintiff to a judgment of foreclosure. *HSBC Bank USA, National Ass'n v. Rowe*, 2015 IL App (3d) 140553, ¶ 21. Again, attaching the note to the complaint is *prima facie* evidence that the plaintiff owns the note. *Id*.

¶ 37    As support for their argument that the Modification Agreement is a negotiable instrument, the Borrowers argue that "[t]he construction of this statutory language is consistent with the longstanding rules of statutory construction approved by our Supreme Court. See e.g., *Solon v.

*Midwest Medical Records Association, Inc.*, 236 Ill. 2d 443, 440-441 (2010)." They then reiterate their argument that the language of the indorsement provisions on the new note supersedes the alleged indorsement in blank as to the original note. Finally, they state, "[a]ccordingly, plaintiff failed to demonstrate a *prima facie* case in its original complaint and Motion for Summary Judgment since it makes no reference to show its status as a holder or entitlement interest to enforce the Modification Agreement, and the trial court erred when it found that Plaintiff had standing as well as its entry of summary judgment in Plaintiff's favor."

¶ 38　　In response, BNY Mellon contends that the Modification Agreement fails the first requirement under section 3-104(a) of the UCC (810 ILCS 5/3-104(a) (West 2010)) because the Modification Agreement is *not* an unconditional promise. Specifically, it cites section 3-106 of the UCC, which provides that in order to be unconditional, the promise cannot, among other things, provide that it is subject to, or governed by, another writing. 810 ILCS 5/3-106(a)(ii) (West 2010) ("(a) [e]xcept as provided in this Section, for the purposes of Section 3-104(a), a promise or order is unconditional unless it states (i) an express condition to payment, (ii) *that the promise or order is subject to or governed by another writing*, or (iii) that rights or obligations with respect to the promise or order are stated in another writing. A reference to another writing does not of itself make the promise or order conditional." (Emphasis added.)).

¶ 39　　BNY Mellon argues that the Modification Agreement begins by explicitly stating that it "amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the 'Security Instrument')" and "(2) the Note, *** as secured by the Security Instrument." It contends that although merely *referencing* another writing does not make a promise conditional (see 810 ILCS 5/3-106(a) (West 2010)), *amending* another writing goes far beyond a mere reference.

¶ 40　　BNY Mellon also contends that the Modification Agreement is not a negotiable instrument because it requires the borrower to comply with covenants under the mortgage and expressly modifies the mortgage.

¶ 41　　First, the Borrowers' argument that the plain language of section 3-104 of the UCC indicates that the Modification Agreement is a negotiable instrument is forfeited because the Borrowers make only conclusory statements and do not support their argument with any reasoning. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (appellant's brief shall contain the contentions of the appellant *and the reasons therefor*). Other than their reference to *Solon* for the proposition that the construction of the language in section 3-104 is "consistent with the longstanding rules of statutory construction approved by our Supreme Court," the Borrowers do not give any reasons in support of their argument. The principles referred to in *Solon* are simply that a court will avoid rendering any part of a statute meaningless or superfluous and that we will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *Solon*, 236 Ill. 2d at 440-41. These references do not aid this court in determining *how* the Modification Agreement might meet the requirements of section 3-104. 810 ILCS 5/3-104 (West 2010).

¶ 42　　Forfeiture aside, however, we agree with BNY Mellon, although for a different reason, that the Modification Agreement does not appear to be a negotiable instrument because it does not contain an unconditional promise as required by section 3-106 of the UCC. 810 ILCS 5/3-106(a)(ii) (West 2010).

¶ 43　　The Modification Agreement explicitly states that it "*amends and supplements* (1) the Mortgage, Deed of Trust or Security Deed (the 'Security Instrument')" and "(2) the Note, ***

as secured by the Security Instrument." (Emphasis added.) BNY Mellon argues that the word "amends" goes well beyond a simple reference to another document. We note that the dictionary definition of the word "amend" is: "1: to put right; especially: to make emendations in (as a text)[;] 2(a): to change or modify for the better ***[;] 2(b): to alter especially in phraseology; especially: to alter formally by modification, deletion, or addition." (Emphasis omitted.) Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/amend (last visited Aug. 8, 2016).

¶ 44   Although we agree that an amendment to a document goes beyond a mere reference to it, that does not mean that an amended document cannot stand alone and be unconditional. However, the Modification Agreement also states that it *supplements* the mortgage and the note, which is more problematic for the Borrowers.

¶ 45   The dictionary definition of the word "supplement" is "something that is added to something else in order to make it complete." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/supplement (last visited Aug. 8, 2016). Therefore, by definition, something that is supplemented *completes something else*, and makes the supplement *conditional upon* the referenced document.

¶ 46   In their reply brief, the Borrowers dissect several parts of the Modification Agreement in an attempt to show that it is a negotiable instrument pursuant to section 3-104 of the UCC. 810 ILCS 5/3-104 (West 2010). These arguments are forfeited because they are raised for the first time in the reply brief. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) ("Points not argued [in the opening brief] are waived and shall not be raised in the reply brief ***."). However, in their reply brief the Borrowers also respond to some of BNY Mellon's arguments that the Modification Agreement is not a negotiable instrument. Therefore, we will address those responses. See Ill. S. Ct. R. 341(j) (eff. Jan. 1, 2016) ("The reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee and need contain only Argument.").

¶ 47   The Borrowers refer to BNY Mellon's argument that the Modification Agreement's requirement that the borrower comply with covenants under the mortgage destroys the Modification Agreement's negotiability. The Borrowers argue that the case BNY Mellon cites for this proposition, *Sturgis National Bank v. Harris Trust & Savings Bank*, 351 Ill. 465, 482-83 (1933), "confirms that a reference to a security instrument in an otherwise negotiable instrument is presumed to merely refer the holder to its rights regarding security and *not* modifying the obligations to pay or making the obligation to pay uncertain." (Emphasis in original.) The Borrowers acknowledge that the instrument in *Sturgis* was a bond rather than a mortgage note, but they observe that the *Sturgis* court held that when a reference in such an instrument presents a "questionable problem," a court will be inclined to interpret the reference as one *not* qualifying the promise to pay. *Id*. at 483.

¶ 48   We are not persuaded. First, the language in the Modification Agreement is much more than a reference to the mortgage; instead, it explicitly lists the obligations in the mortgage *that are now carried over to the Modification Agreement*: "[t]he Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument (the mortgage) including without limitation the Borrower's covenants and agreement to make all payments of taxes, insurance premiums, assessments, escrow items [and] impounds." Second, unlike in the *Sturgis* case, here, the Modification Agreement does not present a "questionable problem"

regarding its negotiability. The terms of that agreement specifically state that it supplements the original note and mortgage, which destroys its negotiability.

¶ 49 The Borrowers also address BNY Mellon's argument that the Modification Agreement modifies the requirements of the mortgage and therefore contains undertakings other than a promise to pay, which destroys the agreement's negotiability. The Borrowers contend that nothing in the Modification Agreement changes the requirements concerning payment or anything else in the mortgage, and they again note mere references to a security instrument do not destroy an instrument's negotiability.

¶ 50 We need not address the issue of whether the Modification Agreement modifies the requirements in the mortgage because we have already found that the Modification Agreement supplements the mortgage and the note and is burdened by the covenants contained in the mortgage, both of which destroy its negotiability.

¶ 51                                   2. Foreign Authority

¶ 52 Next, the Borrowers assert that although no Illinois court has directly addressed this issue, *Romero* will persuade us that the Modification Agreement is in fact a negotiable instrument. The Borrowers allege that in *Romero*, the New Mexico Supreme Court held that a plaintiff bank that possessed two notes—one specifically indorsed to someone other than the bank and the other with two indorsements, one in blank and the other a special indorsement to a third party who was not the bank—failed to adequately demonstrate standing to enforce the notes. The court reasoned that the bank failed to prove its status as a holder in due course and lacked a title interest because neither note contained a special indorsement payable to the bank or a proper indorsement in blank, which would make the note bearer paper. The court held:

> "Possession of an unendorsed note made payable to a third party does not establish the right of enforcement, just as finding a lost check made payable to a particular party does not allow the finder to cash it. [Citations.] The Bank's possession of the Romeros' unendorsed note made payable to Equity One does not establish the Bank's entitlement to enforcement." *Romero*, 2014-NMSC-007, ¶ 23, 320 P.3d 1.

¶ 53 The Borrowers argue that, just like in *Romero*, in this case, BNY Mellon has produced two notes with several indorsements. The first original note contained an indorsement in blank on an affixed allonge. The Modification Agreement, by its own terms, "amended the original note *and* constituted commercial paper and was a negotiable instrument, but was payable to someone *other* than the plaintiff—Washington Mutual." (Emphases in original.) The Borrowers reiterate that no one at Washington Mutual specially indorsed the Modification Agreement. Since BNY Mellon did not show that the Modification Agreement was specially indorsed to it or was properly indorsed in blank, the trial court erred as a matter of law in granting BNY Mellon's motion for summary judgment, the judgment of foreclosure, and the confirmation of sale.

¶ 54 In response, BNY Mellon argues that there are two problems with the Borrowers' reliance on *Romero* as persuasive authority: (1) as the Borrowers have described the holding in *Romero*, it does not support their argument, and (2) they have misstated the actual facts of the case, which also do not support their argument.

¶ 55 BNY Mellon contends that the Borrowers describe *Romero* as involving two distinct promissory notes, both of which were specially indorsed to third parties. Under these alleged

circumstances (the absence of a properly indorsed note), BNY Mellon argues, it is not surprising that the New Mexico Supreme Court would hold that the bank lacked standing to enforce either negotiable instrument. However, BNY Mellon argues, the court's rejection of the bank's attempt to enforce two distinct negotiable instruments, neither of which was properly indorsed, does not suggest anything about whether a loan modification agreement is a negotiable instrument or whether a mortgagee has standing to foreclose a modified mortgage when the underlying promissory note is properly indorsed.

¶ 56    With regard to the actual facts of the case, BNY Mellon claims that *Romero* involved a foreclosure action in which there was only *one* note, rather than two separate notes. *Id.* ¶ 2. The *copy* of the note attached to the foreclosure complaint bore no indorsements, but the original note admitted at trial had two indorsements: a blank indorsement by the original obligee and a special indorsement to a third party by the original obligee. *Id.* ¶ 10. The *Romero* court found that the two indorsements were placed on the note in the only possible order: first, the blank indorsement converting the note to bearer paper, followed by the special indorsement by the original obligee, who still had possession of the bearer paper. *Id.* ¶ 26. Given these circumstances, as well as other evidence that the note and mortgage had not been transferred until the commencement of the foreclosure action, the court held that the bank had not proven that it was the holder of the note when the complaint was filed. *Id.* ¶ 28.

¶ 57    In their reply brief, the Borrowers did not respond to BNY Mellon's arguments regarding *Romero*.

¶ 58    We agree with both of BNY Mellon's arguments with regard to *Romero*. First, we agree that the Borrowers misinterpret *Romero*'s facts. In *Romero*, the bank did not produce two notes—it attached a copy of the note to the complaint, and it produced the original note at trial. *Id.* ¶ 10. Under the Borrowers' interpretation of the facts, there were two notes that were both specially indorsed but neither one to the bank. Therefore, as BNY Mellon suggests, based upon those (incorrect) facts, the New Mexico Supreme Court's finding that the bank did not have standing to bring a foreclosure action would not be surprising and does not support the Borrowers' argument that *Romero* helps their case.

¶ 59    However, instead, the New Mexico Supreme Court stated that the note introduced at trial differed significantly from the note attached to the foreclosure complaint and that there was no explanation for that discrepancy. *Id.* ¶ 22. Clearly, then, the court was referring to one note. The fact that the court found that the bank did not have standing because it was not a holder in due course of the note, when the last indorsement was a special indorsement to a third party, also does not aid the Borrowers' case.

¶ 60    BNY Mellon then argues that other foreign jurisdictions, using effectively identical versions of section 3 of the UCC, have consistently held that loan modification agreements are not negotiable instruments. It cites *Guniganti v. Kalvakuntla*, 346 S.W.3d 242, 250 (Tex. App. 2011), *Dasma Investments, LLC v. Realty Associates Fund III, L.P.*, 459 F. Supp. 2d 1294, 1302 (S.D. Fla. 2006), and *Federal Deposit Insurance Corp. v. Parkway Executive Office Center*, No. CIV. A. 96-121, 1997 WL 535164 (E.D. Pa. Aug. 18, 1997).

¶ 61    In *Guniganti*, the parties were limited partners who executed a note secured by a deed of trust to some property. After defaulting on the note, the partnership executed a modification of the note and deed of trust. The modification provided, "except as to such changes made herein, the terms and provisions of the Note as modified *shall be brought forward and remain in all aspects unchanged*." (Emphasis added and internal quotation marks omitted.) *Guniganti*, 346

S.W.3d at 245. The note also provided, "NOT ALL of the principal amount of this Note has been advanced on the date hereof. Additional advances will be made in accordance with the terms and conditions of the Loan Agreement, reference to same being here made for all purposes." (Internal quotation marks omitted.) *Id*. The note again went into default, and Guniganti and the appellees then purchased the note and deed of trust from the bank. By the terms of the transfer, Guniganti obtained a 40% undivided interest in the note and deed of trust, and the appellees each obtained a 20% undivided interest. Over four years later, Guniganti sued the partnership, seeking 40% of the unpaid balance due on the note and the modification, foreclosure of the deed of trust, and an order of sale. In their plea in intervention, the appellees argued, among other things, that the four-year limitations period for contractual debts applied, rather than the six-year period for negotiable instruments, and that the four-year period had expired. *Id*. at 247. The trial court granted partial summary judgment and held that neither the note or the modification alone, nor the note as amended by the modification, was a negotiable instrument.

¶ 62    On appeal, the court first cited the UCC's definition of an unconditional promise and then held that the note was not a negotiable instrument. Specifically, it held that the note did not contain an unconditional promise to pay when it referred to the loan agreement and burdened the note with the conditions of that agreement. *Id*. at 249-50. With regard to the loan modification, the court held that it also did not constitute an unconditional promise when its language indicated that the terms and provisions of the note as modified shall be brought forward and remain in all respects unchanged and that it reaffirmed the obligors' respective liability under the note. Since the modification could not stand alone, it was not a negotiable instrument. *Id*. at 250.

¶ 63    In their reply brief, the Borrowers argue that *Guniganti* is distinguishable because in the instant case, neither the original note nor the Modification Agreement references or incorporates any other contract, except the mortgage, which does not destroy its negotiability. We fail to understand how the Borrowers can make this argument when it is quite clear from the face of the Modification Agreement that it supplements the mortgage *and the note*. That is not a mere reference to the note; instead, as we have held, the Modification Agreement supplements the note to make it complete. See Merriam-Webster Online Dictionary, http://merriam-webster.com/dictionary/supplement (last visited Aug. 8, 2016).

¶ 64    We also agree with the reasoning of the other cases that BNY Mellon cites as support for the proposition that the wording of the Modification Agreement destroys its negotiability. See *Dasma Investments, LLC*, 459 F. Supp. 2d at 1302 ("the 'Addendums' cannot stand alone as a negotiable instrument, as it incorporates and maintains in full force and effect all of the non-modified provisions of the original promissory note"); *Federal Deposit Insurance Corp.*, No. CIV. A. 96-121, 1997 WL 535164, at *17 ("the Modification cannot be negotiable because it is subject to the other loan documents which contain additional rights and obligations with respect to the promise, making it conditional"). In their reply brief, the Borrowers do not respond to BNY Mellon's references to these cases.

¶ 65    Instead, the Borrowers cite *Burns* for the proposition that under the proper circumstances, a mortgage loan modification may stand alone and qualify as a negotiable instrument. However, although the Borrowers note that the *Burns* court (the same court as in *Guniganti*) relied upon a very similar definition of a "negotiable instrument" as that in section 3-104 of the UCC and that the *Burns* court held that the modification agreements in that case satisfied the

requirements of a negotiable instrument, *the Borrowers do not state the terms of those modification agreements so that we can compare them to the terms of the instant Modification Agreement.* Nevertheless, since this issue is one of first impression in Illinois, we will review *Burns* to determine under what circumstances that court found that the modification agreements were negotiable instruments.

¶ 66    In *Burns*, loan modification agreements were executed that reduced the interest rate on the loans. For reasons not pertinent to this appeal, the borrower argued on appeal that the holder-in-due-course doctrine did not apply to the loan modification agreements because they were not negotiable instruments. *Burns*, 880 S.W.2d at 153. Specifically, he contended that they were not negotiable because, by adding an obligation to pay taxes, which amount was estimated in a separate assumption agreement and might vary each year, they no longer contained an obligation to pay a certain sum. *Id.* The court disagreed with the borrower and held that the obligation to pay taxes was not a new promise and that the notes underlying the assumption and modification agreements were negotiable instruments. Therefore, it held, the modification agreements were separate agreements that did not affect the negotiability of the notes. *Id.* The court then made an important statement. It said, "[m]oreover, it is to the terms of the *note* that we look for satisfaction of the negotiability requirements." (Emphasis in original.) *Id.* Accordingly, *Burns* supports BNY Mellon's contention that it is the note and not the Modification Agreement that determines whether BNY Mellon is a holder in due course. In addition, the fact that the modification agreements in *Burns* were considered negotiable instruments does not support the Borrowers' contention that the Modification Agreement in this case is a negotiable instrument. We do not disagree with the Borrowers' proposition that under the proper circumstances, a mortgage loan modification may stand alone and qualify as a negotiable instrument. However, under the facts of this case, the Modification Agreement is *not* a separate agreement, and therefore it does not constitute a negotiable instrument.

¶ 67    For all these reasons, we hold that BNY Mellon had standing to bring this foreclosure action because it was a holder in due course of the original note and because the terms of the Modification Agreement destroyed its negotiability, so it is irrelevant that the Modification Agreement was not indorsed in blank or specially indorsed to BNY Mellon.

¶ 68                    C. Admission of Affidavit and Computerized Business Records

¶ 69    We now turn to the Borrowers' claim that the trial court erred in admitting Feaster's affidavit with the computerized business records attached to prove that the Borrowers were in default on their mortgage, when those records lacked a proper foundation and authentication under Illinois law.

¶ 70    In response, BNY Mellon asserts that the Borrowers forfeited this issue on appeal by failing to object to the admission of the affidavit and records prior to the entry of summary judgment.

¶ 71    In their reply brief, the Borrowers argue that they did not forfeit this argument because at the hearing on BNY Mellon's motion for summary judgment, their counsel argued, "if the Plaintiffs have business records that show with a foundation under Rule 902.11 that my clients have not paid and specifically what they defaulted, then they're entitled to judgment" and later said, "[a]nd the exhibit [BNY Mellon] attach[es] is something from Wells Fargo saying that it's transmitted by third parties with knowledge, and I really can't tell what those records mean or if there's a default."

¶ 72 It is well settled that issues not raised in the trial court are forfeited and may not be raised for the first time on appeal. *Haudrich v. Howmedica*, 169 Ill. 2d 525, 536 (1996).

¶ 73 Motions for reconsideration are designed to bring to the court's attention newly discovered evidence that was unavailable at the time of the original hearing, changes in existing law, or errors in the court's application of the law. *Continental Casualty Co. v. Security Insurance Co. of Hartford*, 279 Ill. App. 3d 815, 821 (1996) (citing *Korogluyan v. Chicago Title & Trust Co.*, 213 Ill. App. 3d 622, 627 (1991)). A trial court is correct in declining to address an issue raised in a motion to reconsider that could and should have been raised at the hearing on the motion for summary judgment. *Id.*

¶ 74 We agree with BNY Mellon that the Borrowers have forfeited this argument. It is clear from the record that, at the hearing on the motion for summary judgment, the Borrowers were not objecting to the admission of the Wells Fargo affidavit and business records on foundational grounds. Instead, when they argued, "if the Plaintiffs have business records that show with a foundation under Rule 902.11 that [the Borrowers] have not paid and specifically what they defaulted," they were arguing that BNY Mellon *should have provided records from Washington Mutual, and not Wells Fargo*, to prove that they had defaulted on the note and mortgage. Also, the Borrowers' counsel's alleged confusion when she argued that she couldn't "tell what [the Wells Fargo] records [meant] or if there [was] a default" does not rise to the level of an objection to those records on foundational grounds. Although counsel finally did object to the admission of the affidavit and business records at the hearing on the motion to reconsider, it was too late. This argument could and should have been raised at the hearing on the motion for summary judgment. Therefore, the Borrowers have forfeited our review of this issue.

¶ 75                                    III. CONCLUSION

¶ 76 In sum, BNY Mellon had standing to bring this foreclosure action because it was a proper holder in due course when it possessed the original note that was indorsed in blank. Also, it was immaterial that the Modification Agreement was not indorsed in blank and that it was specially indorsed to Washington Mutual because by its terms the agreement was not a negotiable instrument. Finally, the Borrowers forfeited the issue of the alleged lack of foundation for the Wells Fargo affidavit and computerized business records when they failed to object on foundational grounds until the hearing on their motion to reconsider.

¶ 77 For all these reasons, the judgment of the circuit court of De Kalb County is affirmed.

¶ 78 Affirmed.