NOTICE
Decision filed 03/24/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240419-U

NO. 5-24-0419

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| BABATUNDE OWOSENI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 19-L-978 |
| | ) | |
| ALLSTATE INDEMNITY COMPANY, | ) | Honorable |
| | ) | Ronald J. Foster Jr., |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's orders dismissing part of plaintiff's complaint and granting defendant summary judgment on the remainder where defendant paid all amounts due pursuant to its insurance policy and plaintiff failed to plead any specific facts showing that defendant engaged in fraud or deceptive conduct.

¶ 2    Plaintiff, Babatunde Owoseni, appeals the circuit court's orders granting defendant Allstate Indemnity Company's motions for summary judgment and to dismiss plaintiff's second amended complaint. Plaintiff contends that he was entitled to judgment as a matter of law on all five counts. We disagree and affirm.

¶ 3                                  I. BACKGROUND

¶ 4    In August 2018, plaintiff purchased from defendant an insurance policy covering a rental property he had purchased in Centreville. The policy provided an actual cash value dwelling

1

protection limit of $44,080, an actual cash value personal property protection limit of $2,204, fair rental income protection, coverage for debris removal, and "building code" coverage of up to $4,408. The policy included a $1,000 deductible.

¶ 5     On October 24, 2018, the building burned down. After inspecting the property, defendant declared it a total loss. Defendant estimated the building's actual cash value at $53,134.68, which exceeded the $44,080 dwelling protection policy limit. Defendant estimated that the replacement value of plaintiff's personal property inside the building was $1,199.98 and issued him a check in that amount. Defendant also received a completed tax and demolition form and demolition and removal estimate. Pursuant to that form, the City of Centreville required defendant to withhold $10,000 for debris removal and demolition. On January 19, 2019, defendant paid plaintiff $34,080 for damage to the dwelling.

¶ 6     Defendant later received photographs confirming that the debris had been removed, and the property had been cleared. Thus, it paid plaintiff another $12,204, which included the reserved amount plus $2,204 for debris removal. Defendant's payments thus totaled $47,483.98, for dwelling damage, personal property damage, and reasonable debris removal expenses.

¶ 7     Defendant did not pay plaintiff anything for lost rental income. According to an affidavit of Jenny Newcomer, plaintiff admitted that the only resident of the building was a squatter. Plaintiff did not have a written lease with him, and he did not pay rent. In fact, plaintiff claimed that the resident had been shot and was in a coma at the time of the fire. Defendant further learned that the property could not have been legally leased because it lacked a furnace or a water heater.

¶ 8     Plaintiff asked defendant to reconsider his fair rental income claim, which it agreed to do if plaintiff could provide any information or documentation supporting his claim. Instead, plaintiff confirmed his previous statements that there was no written lease, and he was not receiving rent at

the time of the fire. Plaintiff asked defendant to locate the building's former owner to verify the lost rental income claim. Defendant located the prior owner. Plaintiff later told defendant that he had spoken to the former owner, who confirmed that the property did not have any paying tenants and that the people staying there were squatters.

¶ 9 Apparently unsatisfied with the amount he received from defendant, plaintiff, through counsel, filed a two-count complaint. At plaintiff's instance, his attorney withdrew, and he proceeded *pro se* thereafter. Following considerable motion practice, plaintiff filed the amended complaint at issue. Count I alleged breach of contract; count II alleged a vexatious refusal to pay under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2018)); count III alleged special or consequential damages; count IV alleged common-law fraud; and count V alleged fraud under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2018)).

¶ 10 Defendant filed its answer and affirmative defenses and a motion to dismiss counts III, IV, and V on August 12, 2023, which the circuit court accepted for filing on August 14, 2023. Defendant discovered that these pleadings were filed three days late due to a calendaring error; therefore, it moved for leave to file the answer and motion *instanter*, which the court allowed.

¶ 11 Plaintiff, however, moved for a default judgment, claiming that defendant forfeited the ability to respond to his amended pleading. Plaintiff also filed five separate summary-judgment motions, one for each count in the amended complaint. He also filed an affidavit averring, "I can testify to my personal knowledge of what I have submitted in all my motions and in all my exhibits that I have submitted." Plaintiff subsequently moved for judgment on the pleadings as well as multiple motions to deem facts from his summary-judgment filings admitted.

3

¶ 12   The court denied plaintiff's motions for default and to deem facts admitted. Defendant moved to strike plaintiff's affidavit, asserting that it consisted almost entirely of conclusions and, while asserting that he *could* testify to certain things, did not actually contain any specific facts in support of his summary-judgment motions.

¶ 13   The court granted defendant's motion to dismiss, denied plaintiff's motion for judgment on the pleadings, while taking under advisement both parties' motions for summary judgment and defendant's motion to strike plaintiff's amended affidavit. The court subsequently granted defendant's motions for summary judgment and to strike plaintiff's affidavit and denied plaintiff's summary-judgment motions.

¶ 14   Plaintiff filed a motion to "admit evidence," consisting of a flash drive purportedly containing a recording of a conversation between plaintiff and an agent of defendant. The court and defendant treated the motion as one to reconsider the court's previous order. The court denied the motion and plaintiff appeals.

¶ 15                        II. ANALYSIS

¶ 16   Although his precise contentions are difficult to discern, plaintiff contends that the circuit court erred by granting defendant's motions to dismiss and for summary judgment while denying his summary-judgment motions. Defendant responds that partial dismissal was proper because it paid plaintiff everything to which he was entitled under the policy and plaintiff has not alleged any specific facts to show otherwise. It further argues that summary judgment was proper because plaintiff's claims of fraud, consumer fraud, and "consequential damages" are preempted by section 155 of the Illinois Insurance Code and, in any event, he had not pleaded or proven any specific facts to show that defendant was guilty of fraudulent or deceptive conduct.

4

¶ 17    Preliminarily, we note that plaintiff's brief exceeds the 50-page limitation prescribed in Illinois Supreme Court Rule 341(b)(1) (eff. Oct. 1, 2020). Even after disregarding elements of the brief that the rule excludes from the calculation, plaintiff's brief appears to be well in excess of the 50-page limit. While we admonish plaintiff for disregarding the rules, we decline to strike the brief, as the violation does not hinder our review.

¶ 18    More problematic is that, despite the excess verbiage, plaintiff's brief fails to articulate with any specificity how the circuit court erred in dismissing portions of his complaint or in granting defendant summary judgment. Much of plaintiff's brief consists of lengthy quotations from cases and statutes, many having no obvious relevance to the matter at hand, followed by broad conclusional statements to the effect that the court misunderstood the law or defendant made deceptive statements.

¶ 19    As plaintiff himself acknowledges, a reviewing court is entitled to briefs that are articulate, organized, and present cohesive legal argument in conformity with our supreme court rules. *Schwartz v. Great Central Insurance Co.*, 188 Ill. App. 3d 264, 268 (1989). A reviewing court is also entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; arguments inadequately presented on appeal are forfeited. *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 401 (1987). It is not the obligation of this court to act as an advocate for a party. *See v. Illinois Gaming Board*, 2020 IL App (1st) 192200, ¶ 24.

¶ 20    In addition, Rule 341(h)(7) requires the appellant to present reasoned argument and citation to legal authority and to specific portions of the record in support of his claim of error. Ill. S. Ct. R. 341(h)(7) (eff Oct. 1, 2020). This rule is especially important because, when reviewing a case,

5

we start with the presumption that the circuit court's ruling was correct under the law and the facts. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 15.

¶ 21 By contrast, defendant meticulously documents its argument that the court properly granted it summary judgment because it paid plaintiff all amounts he was due under the policy. "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002); 735 ILCS 5/2-1005(c) (West 2018).

¶ 22 Plaintiff's count I alleged breach of the insurance contract. The elements of a breach of contract claim are (i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant, and (iv) a resultant injury to the plaintiff. *Babbitt Municipalities, Inc. v. Health Care Service Corp.*, 2016 IL App (1st) 152662, ¶ 27.

¶ 23 Plaintiff has failed to point to any specific facts showing a breach by defendant of the insurance contract. Defendant ultimately paid the $44,080 policy limit for the fair cash value of the building (after releasing the $10,000 reserved by the city for demolition). It paid $1,199.98 for the value of plaintiff's personal property in the building. It also paid $2,204 (5% of the maximum coverage amount for the dwelling limit) for reasonable debris removal expenses, for a total of $47,483.98.

¶ 24 Plaintiff contends that defendant unreasonably withheld payment for fair rental income. The policy covers:

> "Your lost fair rental income resulting from a covered loss ***
>
> This protection begins only after you have given us notice of the covered loss and only if, at the time of the loss, the rental unit was habitable and:

6

a. occupied by a tenant; or

b. you had a signed, written rental agreement for the rental unit, *** or

c. the rental unit was occupied by a tenant within 60 days of the loss and was in the process of being renovated."

¶ 25     Defendant's investigation revealed that the only occupant of the building was a squatter who had no written lease and was not paying rent. Plaintiff does not dispute that the building had no paying tenants. He argues only that defendant's construction of the policy is unreasonable and unfair.

¶ 26     An insurance policy is a contract to which the general rules governing the interpretation of contracts apply. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Accordingly, our primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language. *Id.* If the policy language is unambiguous, we must apply it as written. *Id.* Whether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation. Although "creative possibilities" may be suggested, we consider only reasonable interpretations. While we must construe policy terms that limit an insurer's liability liberally construed in favor of coverage, this rule only comes into play when the policy is ambiguous. *Id.* We will not strain to find an ambiguity where none exists. *Id.*

¶ 27     Any reasonable construction of the policy requires a rent-paying tenant for the fair rental income coverage to apply. Nothing in the policy required coverage for the hypothetical possibility that a tenant might have been found in the future.

¶ 28     Plaintiff also contends that defendant unreasonably withheld building-code coverage. The policy provided coverage for expenses

"to comply with local building codes after covered loss to your dwelling or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of your dwelling."

¶ 29    The plain meaning of this provision is that it provided coverage when, after a covered loss, the insured opted to repair or replace the building, and those costs are increased due to the enforcement of building codes, ordinances, or other laws. The undisputed evidence shows that plaintiff never repaired or replaced the building after the fire but instead demolished it.

¶ 30    Plaintiff argues that he is entitled to coverage under that provision because defendant required him to make some repairs before it would insure the building. As noted, however, the coverage applied only to repairs made after a loss occurred.

¶ 31    Plaintiff argues generally that the court should have granted his motions for default judgment and to have all facts deemed admitted. He offers little independent argument on these points but incorporates by reference an earlier argument that appears to have little or no relevance to this issue. In any event, the circuit court did not err in denying his motions for a default judgment and to have facts deemed admitted.

¶ 32    A court may grant a default judgment "for want of an appearance, or for failure to plead, but the court may in either case, require proof of the allegations of the pleadings upon which relief is sought." 735 ILCS 5/2-1301(d) (West 2018). However, a default judgment is a drastic measure, not to be encouraged and to be employed only as a last resort. *Rockford Housing Authority v. Donahue*, 337 Ill. App. 3d 571, 574 (2003). Illinois has a broad overall policy of resolving cases on the merits rather than on technicalities. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998).

8

¶ 33    Here, plaintiff's only apparent basis for requesting a default judgment is that, when he filed his amended complaint and the court gave defendant 21 days to respond, it filed its responsive pleadings 3 days late. On discovering the error, defendant sought leave to file the late response, which the court granted. Illinois Supreme Court Rule 183 allows a court to extend the time for filing any pleading or doing any other act "required by the rules to be done within a limited period, either before or after the expiration of the time." Ill. S. Ct. R. 183 (eff. Feb. 16, 2011).

¶ 34    Defendant's late response was apparently inadvertent. It immediately sought leave to file the pleadings late. Plaintiff fails to explain how he was prejudiced by defendant's responses being three days late. Thus, the court did not abuse its discretion in denying a default judgment.

¶ 35    Plaintiff's argument regarding his multiple requests to deem facts admitted is even more obscure. His only apparent basis for such a request is that defendant filed its responsive pleadings three days late—with the court's permission.

¶ 36    If a party fails to respond properly or object to a request to admit facts within 28 days of service, those facts may be deemed admitted. *Turner Investors v. Pirkl*, 338 Ill. App. 3d 676, 684 (2003); Ill. S. Ct. R. 216(c) (eff. July 1, 2014). Here, the circuit court ordered defendant to respond to plaintiff's motions for summary judgment and his motion for judgment on the pleadings within 30 days following an October 12, 2023, hearing. Defendant did so, filing its responses on October 31, 2023, 19 days after the hearing. Its responses fully addressed all allegations in plaintiff's motions. After these responses were filed, plaintiff filed multiple motions to deem facts admitted. Again, the only apparent basis for the motion was that the defendant inadvertently filed its responsive pleadings—as opposed to its Rule 216 answers—three days late. We have already held that the court properly excused the late filing. Thus, there was no basis for a motion to deem facts admitted.

9

¶ 37    Even if defendant's response had been inexcusably late, plaintiff cites no authority for his contention that the failure to timely respond admitted all relevant facts and entitled him to judgment. If a complaint fails to state a cause of action a trial court may dismiss it *sua sponte* even in the absence of a response from the defendant. *Muhammad v. Bailey*, 2024 IL App (1st) 230702-U, ¶ 19 (citing *Mason v. Snyder*, 332 Ill. App. 3d 834, 842 (2002)); *Rhodes v. Mill Race Inn, Inc.*, 126 Ill. App. 3d 1024, 1028 (1984) (a trial court on its own motion also possesses the authority to dismiss any claim that fails to state a cognizable cause of action). Moreover, even where the defendant is in default, the plaintiff is still required to prove up its default damages. *Illinois Neurospine Institute, P.C. v. Carson*, 2017 IL App (1st) 163386, ¶ 33. Thus, plaintiff was not entitled to judgment due to defendant's late filing.

¶ 38    Plaintiff contends that he was entitled to judgment as a matter of law on count II, alleging a violation of section 155 of the Insurance Code. He sought various collateral expenses as well as a statutory penalty. He insists that his right to payment for lost rental income, building code expenses, and additional personal property was clear and that defendant's refusal to pay was vexatious and unreasonable.

¶ 39    Section 155 provides, in pertinent part:

> "In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts: *** (b) $60,000[.]" 215 ILCS 5/155(1)(b) (West 2018).

10

Because no additional amounts were due, defendant's refusal to pay those amounts cannot be considered vexatious or unreasonable. As such, plaintiff's section 155 claim must necessarily fail.

¶ 40    Plaintiff also contends that the court erred by dismissing counts III through V of the second amended complaint. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences therefrom, construing the allegations in the light most favorable to the plaintiff. *Mercado v. S&C Electric Co.*, 2025 IL 129526, ¶ 18. A cause of action should not be dismissed unless it is clearly apparent that no set of facts can be proved that would entitle a plaintiff to recover. *Id.*

¶ 41    Plaintiff's count III sought "consequential damages." Consequential damages are simply one element of damages available where a defendant breaches a duty to the plaintiff. Plaintiff cites no case recognizing a separate cause of action for consequential damages. Defendant contends that any such action is preempted by section 155, which provides the exclusive remedy where an insurer unreasonably delays or denies payment. See *Mazur v. Hunt*, 227 Ill. App. 3d 785, 791 (1992) ("*any* count alleging nothing more than the conduct proscribed by section 155 is preempted by the statute" (emphasis in original and internal quotation marks omitted)). In any event, because defendant did not owe any additional payment under the policy, plaintiff cannot establish consequential damages.

¶ 42    Plaintiff's counts IV and V alleged common-law fraud and violations of the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 2018)). Defendant argues that any such claims are preempted by section 155. However, *Mazur* held that section 155 preempts fraud claims that consist of "nothing more than the conduct proscribed by

11

section 155" (*Mazur*, 227 Ill. App. 3d at 791), *i.e.*, an unreasonable or vexatious delay in paying amounts due under the insurance contract. At least arguably, it does not preempt claims for fraud or deceptive conduct in the formation of the contract itself. However, plaintiff has properly pleaded no such claims.

¶ 43　To state a claim for common-law fraud, a party must allege (1) a false statement of material fact; (2) made by one who knows or believes it to be false; (3) with the intent to induce action by another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) an injury resulting from that reliance. *JPMorgan Chase Bank, N.A. v. East-West Logistics, L.L.C.*, 2014 IL App (1st) 121111, ¶ 67.

¶ 44　The elements of a claim under the Act are (1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; (3) that the deception occurred in a course of conduct involving trade and commerce; and (4) damages. *Suburban 1, Inc. v. GHS Mortgage, LLC*, 358 Ill. App. 3d 769, 773 (2005).

¶ 45　In either case, "[t]he facts which constitute an alleged fraud must be pleaded with specificity and particularity, including 'what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made.' " *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 387 (1993) (quoting *Board of Education v. A, C & S Inc.*, 131 Ill. 2d 428, 457 (1989)).

¶ 46　Neither in his second amended complaint nor in his various summary-judgment motions did plaintiff specifically allege that any of defendant's agents intentionally made a false statement or committed a deceptive practice with the intent that plaintiff rely on it and that he actually did rely on it. Plaintiff's brief identifies no such allegations. His vague allegations that defendant made deceptive statements are patently insufficient.

12

¶ 47    In his brief, plaintiff argues at great length that defendant's agent, Mario-Lucio Estevan, made deceptive statements to dissuade him from purchasing additional coverage. According to plaintiff, when he phoned defendant's agent to purchase a policy for the building, Estevan told him that defendant's records showed that plaintiff's building was built in 1940 and, because it was built prior to 1941, only actual-cash value coverage was available. Replacement cost coverage was available only for buildings constructed after 1940. Plaintiff further asserts that in a damage estimate generated after the fire, defendant stated that the building was constructed in 1955. The report concluded that the replacement cost of the building was more than $100,000. However, the actual cash value at the time of the fire was only $53,134.68. Plaintiff seeks the difference between the building's actual cash value and the replacement cost.

¶ 48    Our review of the record reveals that plaintiff never timely asserted this claim in the circuit court. The first mention of such a claim is in plaintiff's motion to admit evidence which the court treated as a motion to reconsider. See *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 32 (arguments not raised in the circuit court are forfeited); *American Chartered Bank v. USMDS, Inc.*, 2013 IL App (3d) 120397, ¶ 13 ("Issues cannot be raised for the first time in the trial court in a motion to reconsider and issues raised for the first time in a motion to reconsider cannot be raised on appeal.").

¶ 49    In any event, plaintiff's allegations fail to state a cause of action for fraud. Fraud must be pleaded with specificity. See *Murphy-Knight*, 248 Ill. App. 3d at 387. Plaintiff has failed to plead that Estevan knew that his statements about the age of the building were false, that he intended that plaintiff rely on them, or that plaintiff actually did rely on them. Plaintiff never unambiguously asserted that he would have purchased the additional coverage had it been available.

13

¶ 50 To the extent plaintiff's brief seeks to raise additional arguments, they are not sufficiently developed and are unsupported by citations to specific pages of the record or pertinent authority. Thus, they are forfeited.

¶ 51                                     III. CONCLUSION

¶ 52 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 53 Affirmed.